[Civ. No. 3655. Third Appellate District.—January 4, 1929.]

C. MYRTLE WILSON, Respondent, v. HARVEY C. BROWN et al., Defendants; C. A. CLEMENT et al., Appellants.

Kelby & Lawson and Samuel M. Garroway for Appellants.

Daze, Mitschrich & Noll for Respondent.

SHIELDS, J., *pro tem.*—This appeal arose from facts of which the following is a sufficient statement: Plaintiff and the defendant Brown were associated together in various real estate activities. While so associated a tract of land near Elsinore, in the county of Riverside, was called to their notice and they took an option for the purchase from its owners, each paying one-half of the cost of the option. The defendants Hursh and Clement were copartners engaged in real estate operations. Plaintiff interviewed the latter defendants with the view of having them purchase the Elsinore property held under the above option, and, after conferences and inspection in which all four of the parties participated, the defendants Hursh and Clement purchased the property with the understanding that they were to finance the purchase and subdivision of the tract and that Brown or Brown and plaintiff Wilson were to do the work of selling it. In consideration of their part in the business defendants Hursh and Clement were to have sixty per cent of the profits, and the defendant Brown, or the defendant Brown and plaintiff, according to the different contentions of the parties, was or were to have the remaining forty per cent. After the enterprise had been well entered upon, but before any of the property had been sold, defendants Hursh and Clement purchased all interest in the enterprise and the property, of the defendant Brown, and denied any interest of the plaintiff in the property, or any right on her part to participate in its sale, or the profits resulting therefrom.

She thereupon began this action to have it adjudged that a partnership had existed in the ownership of the Elsinore property and in the business of its sale; that the partnership had been dissolved; claimed that she was a partner therein; that her interest was a one-fifth interest, and asked for an accounting and a division of partnership assets according to the respective interests of the partners. At the trial the court found the existence of the partnership; that the plaintiff was entitled to have it dissolved; that the defendants "did wrongfully, maliciously and without the consent of the plaintiff" apply property of the partnership to their own use; that the defendants Clement and Hursh "did conspire to defraud the said plaintiff of her rightful and proportionate share of said copartnership money and property" in the manner and to the extent set forth in a certain referee's report, which was made a part of the findings of the court, and then proceeded to award the plaintiff a judgment against the defendants for $3,319.97 out of cash and contracts of sale received by defendants; a number of the lots of the partnership tract remaining unsold of the value of $5,230 and "certificates, bonds and deeds" out of securities and contracts taken by the defendant on account of sales of lots by them, amounting to $5,245, making a total judgment in favor of plaintiff of $13,794.97.

On appeal from this judgment appellants contend, first, that the court erred in finding the existence of a copartnership in favor of the plaintiff. This finding is so substantially supported by the evidence that a recital or restatement of it seems unnecessary. But appellants insist that certain testimony of the plaintiff herself renders this finding erroneous. On cross-examination, when interrogated as to what had been the agreement between the parties as to sharing such losses as might be sustained by the business, plaintiff answered, "Mr. Clement, you know, and Mr. Hursh were financing the proposition, so Mr. Brown and I weren't investing any money, and we had no money to lose in this connection. Q. In the event Mr. Clement and Mr. Hursh lost by it? A. It was their loss. Q. You were not to lose anything? A. I was not to lose anything." This testimony is not inconsistent with the existence of a partnership. In partnership agreements it is usual to provide for an equal sharing of profits and losses, "but if parties are so disposed,

they are competent to agree that all the partners shall participate in the profits, while a portion shall bear all the losses of the original capital." (*Gray* v. *Palmer*, 9 Cal. 616, 639.)

It will be observed that plaintiff does not say that there was an agreement that she should not be liable for any losses which the partnership might sustain. Her statement amounted to no more than an expression of her opinion as to her liability as a copartner. Had losses been sustained, and the partnership continued, she would have been unpleasantly informed as to the error of her opinion. Section 2404 of the Civil Code provides that "an agreement to divide the profits of a business implies an agreement for a corresponding division of the losses, unless it is otherwise expressly stipulated." As the partnership was sufficiently proven, and as in the agreement out of which it grew it was not "otherwise expressly stipulated," plaintiff's liability for her share of possible losses existed to the degree necessary to sustain the finding of a partnership. (20 Cal. Jur. 692.)

■ Appellants complain that no personal judgment should have been rendered against them until the affairs of the partnership had been settled and the partnership assets had all been disposed of. That is the general rule. (*Nakamura* v. *Kondo*, 65 Cal. App. 211 [223 Pac. 425]; *Clark* v. *Hewitt*, 136 Cal. 77 [68 Pac. 303].) But while "in general a judgment may not be entered against a partner in a suit for an accounting until all of the assets have been marshaled and made to bear the burden of the copartnership liabilities, in cases where there are no liabilities to settle, except as between the partners themselves, such course is not necessary." (*Shuken* v. *Cohen*, 179 Cal. 279 [176 Pac. 447].) ■ Where, as in this case, some of the partners have excluded another and have appropriated the partnership property to their own use, the latter may treat the matter as a conversion and, without any accounting or disposition of the former partnership assets, sue the offending partners and recover against them a personal judgment in the amount of his damage. (*Moropoulos* v. *C. H. & O. B. Fuller Co.*, 186 Cal. 679 [200 Pac. 601].) In the case before us the record shows that the debts of the partnership had all been paid before the commencement of the suit and

that it was a proper case in which to render a personal judgment, provided such judgment was correctly arrived at.

Appellants contend that at the time the personal judgment was rendered against defendants there was an outstanding obligation of the partnership which was not settled and against which the defendants were not protected. They insist that until this obligation was met that a personal judgment was premature. They refer to a contract entered into by the defendants to supply a water system to the partnership subdivision. This contract was made by defendants after they had excluded plaintiff from the partnership and after the same had been thereby dissolved. The contract was made by the defendants, and was their contract, and not that of the partnership. But this contract by the defendants undoubtedly enhanced the value at which lots had been sold and entered into the receipts from which plaintiff was given her partnership share. To the extent that she benefited by it she should have borne its probable cost. This was required of her by the judgment.

Defendants themselves furnished an estimate of the probable cost of the "water system," and placed it at $3,141.80. This sum was deducted by the referee from the proceeds of sale in the hands of the defendants before such proceeds were divided, and thus plaintiff was charged with her full share of it. This estimate was accepted by the referee as the probable cost of the entire "water system" from figures furnished by the defendants themselves, which apparently included not alone the well, but the entire pumping equipment. The sufficiency of the allowance for this item does not appear to be questioned except where the defendant Clement testified that "the estimated cost of the water system will probably exceed the amount of $3,141.80." This is too vague a statement to contradict defendants' own estimates, upon which the court acted in arriving at its judgment.

In making its division of the partnership between the parties hereto it appears that there was a surplus of cash, derived from partnership assets, in the hands of the defendants, and that there were "accounts receivable" in the hands of the defendants derived from the sale of lots theretofore made. These accounts receivable were treated by the court as cash and were counted as such in the calcula-

tions by which the court reached the conclusion that the plaintiff was entitled to the cash portion of her judgment for $3,319.97. Appellants complain that this was erroneous, as the sums represented by ''accounts receivable'' might not be collected, or that their collection might be attended by a loss. This contention cannot be sustained. It was found in this case that defendants had wrongfully and maliciously appropriated property of the partnership, of which the lots represented by these ''accounts receivable'' were a part. Plaintiff was entitled, therefore, treating this as a conversion, to a judgment for the reasonable value of the lots so converted. Defendants cannot complain that the price for which they had sold them was not their reasonable value.

Other contentions made by the defendants do not seem to require discussion. Through their own acts they precipitated a condition in which it was difficult to define with exactness the respective rights of the parties. The judgment arrived at seems equitable and just, under the facts found, and, as it is without error, it should be affirmed, and it is so ordered.

Plummer, J., and Hart, Acting P. J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 4, 1929.

All the Justices present concurred.