[Civ. No. 5663.   Fourth Dist.   May 4, 1959.]

R. E. LEWIS et al., Plaintiffs and Respondents, v. E. E. FIRESTONE et al., Appellants; HARRY ROGERS et al., Defendants and Respondents.

Dorsey, Bultman & Bianchi for Appellants.

Borton, Petrini, Conron & Brown for Respondents.

GRIFFIN, P. J.—Originally, this was an action against other makers, under sections 1431-1432 of the Civil Code, for contribution by some of the joint and several makers of a note who, allegedly, were compelled to pay said note. The complaint of R. E. Lewis and Vera M. Lewis, husband and wife, hereinafter referred to as plaintiffs, sought 7/9 contribution, there being nine makers and two payers. By stipulation it was agreed that defendants, cross-complainants and appellants E. E. Firestone and Olive Firestone, and Irving S. Kravitz, Edith Z. Kravitz and Hardy W. Wallen (hereinafter referred to as appellants) all makers of the note, were actually combined for a one-third interest; that cross-defendants and respondents Harry Rogers and Eleanor A. Rogers, husband and wife, were combined for a one-third interest, and that plaintiffs R. E. Lewis and Vera M. Lewis had a like interest.

Nonappealing defendants, Rogers and wife, answered by general denial, and set up as a defense a joint venture, as

evidenced by a written agreement of July 22, 1954 (Exhibit 2) and contended they had sold their entire interest to plaintiffs Lewis. Appellants Firestone et al., answered and pleaded a long cross-complaint, the essence of which was to allege a joint venture by a claimed oral agreement which was ratified by a subsequent written agreement (Exhibit 2). They alleged breach of the agreement by plaintiffs and cross-defendants Lewis, and prayed for judgment terminating the joint venture, distribution of the assets, and for an accounting. The same matter was pleaded as an affirmative defense to the complaint.

There is considerable dispute as to the facts established. The principal contention on this appeal is the insufficiency of the evidence to support the facts found; that the findings are incomplete; and that the judgment is not supported by the findings and is contrary to the evidence and the law.

The Ranch Income Shares, Inc., was adjudicated a bankrupt in May, 1953. Defendant Firestone had been farming its real property and leased land under a lease executed by the trustee in bankruptcy. Firestone had purchased a sprinkling system and new pump on contract. He was indebted to one Bonaventura for fertilizer in the sum of $3,250; to Pacific Gas and Electric Company for power in the sum of $5,200; and owed one Kemble $11,626.12 on an unsecured note given to purchase a one-half interest in a trust deed hereinafter mentioned. During this time Firestone had acquired options to purchase the following claims against the bankrupt: (1) a judgment lien in favor of one Bowline in the sum of $17,000, which he claimed could be purchased for $5,000, and a mechanic's lien in favor of one Freeborn for $4,000, which could be purchased for $3,500. Firestone and his wife claimed they then owned an undivided one-half interest in a promissory note secured by a trust deed in the principal sum of $22,575, dated February 1, 1952, and executed by Ranch Income Shares, Inc., and certain assignments of agricultural leases. Just prior to June 24, 1954, plaintiffs, appellants, and respondents had some form of oral agreement to purchase the assets of said bankrupt. On June 24th, all joined in signing a joint and several note for $15,000, payable to Security-First National Bank at Bakersfield (hereinafter referred to as Security Bank), which was due on October 1, 1954, or on demand at the option of the holder. The money was paid over on July 22, 1954. On July 6, 1954, an agreement in writing was entered into between R. E. Lewis and Harry Rogers as first parties and E. E. Firestone, as second party, reciting:

"WHEREAS: First parties contemplate making a bid to the Trustee in Bankruptcy in the matter of 'Ranch Income Shares, Inc., a Corporation Bankrupt' for all of the land and agricultural leases held in the name of said bankrupt. . . .

"WHEREAS, Second Party has outstanding certain obligations and indebtedness incurred in connection with the operation of a portion of said property as lessee from the said Trustee in Bankruptcy during the year 1953 and,

"WHEREAS, Second Party has joined with First Parties in procuring a loan in the sum of $15,000 from the Security First National Bank, . . .

"Now THEREFORE, in consideration of the premises and the mutual covenants and agreements hereafter set forth *and be* performed by the parties, it is agreed:

"1. The proceeds of said $15,000.00 loan are to be paid to the legal firm of Mack, Bianco, and King of Bakersfield with instructions by the parties as to the disbursement thereof.

"2. Second party agrees to sell, assign, transfer and set over to First Parties *two thirds* of his right title and interest in and to the following described property to wit:

"(a) His equity in the pump and sprinkler system purchased by him under conditional sales contract during the year 1953 while operating a portion of said property as lessee.

"(b) That certain Deed of Trust dated February *2,* 1952 executed by Ranch Income Shares, Inc. . . .

"(c) Those certain agricultural leases acquired by said Second Party on February 27, 1952 from Louis S. Kemble and Esther Kemble . . .

"(d) His option to purchase that certain judgment in the matter of Arnold Bowline . . . and any monies due thereunder.

"(e) Any and all other claims against said Bankrupt Corporation which said party may now have.

"3. That in the event said property, when acquired, is sold or leased the receipts therefrom shall apply first, to the retirement of said $15,000.00 note to Security First National Bank . . . Second to the retirement of a note to Louis Kemble in the sum of $11,626.12. . . . *Third* the power bill due Pacific Gas & Electric Company in the sum of $5200.00 and incurred by Second Party during his said farming operations in 1953.

"4. It is agreed that First Parties will transfer to Second Party by proper deed and assignment an undivided one-third of the interest acquired by them from the Trustee in Bank-

ruptcy by virtue of the bid referred to in the first paragraph of this agreement.

"It is the intention of the parties hereto that said property shall be held in equal shares by the three persons whose names are signed hereto, and that each of them will execute all necessary deeds, transfers and assignments to effect and carry out the provisions of the agreement.

(Signed) "R. E. Lewis<br>
"Harry Rogers<br>
"First Parties

"E. E. Firestone<br>
"Second Party"

A letter of July 6, 1954, from the law firm mentioned in paragraph 1 was directed to Lewis and Firestone. It recites, in part:

"I have for acknowledgment Cashiers Check No. 138965 of Security-First National Bank of Los Angeles, Bakersfield Branch, dated July 6, 1954, payable to you gentlemen, and endorsed to Mack, Bianco & King, in the amount of $15,000.00. This money is to be deposited in our Trustee Account and used as follows:

*Paid.*      1st: Pay *Bonaventura* judgment in the amount of $3,250.00, plus interest, etc.

Pd. 1000 July 14:   2nd: Pay Bowline for assignment of claim, as per option in your hands.

Pd. Fr.
*Pd*   3rd: Pay Freeborn claim in the amount of $4,000.00 or less.

4th: $2,000.00 is to be used to 'back up' a bid for all of the assets of Ranch Income Shares in bankruptcy, which bid is to be made for the assets, subject to the following secured claims:

| | |
|---|---:|
| Firestone-Kelly Trust Deed, approximate amount | $24,000.00 |
| Bowline claim | 17,000.00 |
| Freeborn claim | 4,000.00 |
| | $45,000.00 |

"We are authorized to prepare such bid in the name of R. E. Lewis and submit the same to the bankruptcy court.

Yours Very Truly,

MACK, BIANCO & KING,

(SIGNED)

By   Henry Mack

"The foregoing is satisfactory.

Dated: July 6, 1954.

(SIGNED)   E. E. FIRESTONE

(SIGNED)   R. E. LEWIS"

Lewis and Rogers, in their own names, purchased all the trustee's right, title and interest in the real property and leases of the bankrupt estate, subject to Kemble's note and trust deed, for the sum of $3,000. They purchased the Bowline judgment for $5,000, the Freeborn lien for $3,500, and paid the fertilizer bill in the sum of $3,200, plus incidental transfer charges.

According to the evidence, it appears that the Firestone interests, at the time of the written joint venture agreement, did not own the sprinkler or pump. Each had been previously repossessed by the owner and taken from the property, with some claimed oral understanding that it might be repurchased if not previously sold. It further developed, at that time, the note given by Firestone for the one-half interest in the trust deed was in default, suit had been instituted thereon, and an attachment levied; that the leases Firestone was to transfer to the joint venture were never owned by him and were not transferred, but had already expired and were subsequently renegotiated to Lewis; that the Bowline judgment and Freeborn claim were purchased with the joint venture monies; that the Pacific Gas and Electric bill contracted by Firestone was raised to $7,043.88, which included standby charges; (It is claimed by plaintiffs this was never an obligation of the joint venture) that all financial arrangements by Firestone, in reference to the sprinkler system, pump and deed of trust, represented nothing more than the execution of promissory notes by Firestone, all of which were in default, and nothing was paid thereon except the original note given for the down-payment on the conditional sales contract for the sprinkler and pump, which was paid through the pro-

ceeds of Firestone's 1953 farming activities and through the cotton gin company. The Pacific Gas and Electric Company subsequently obtained a personal judgment against Firestone for the full amount of its claim.

On October 1, 1954, upon demand for payment by the Security Bank, Lewis and his wife paid the $15,000 loan plus interest, by his personal check from money obtained through a subsequent loan, and the note was returned to him. There is some evidence that others participated in the payment of the interest.

Plaintiff testified that this $15,000, used to pay off the Security Bank loan, was obtained from the Bank of America by means of a promissory note executed on September 30, 1954, which was due and payable December 30, 1954, and that it was signed by plaintiff Lewis alone; that the Firestones, Lewises and Rogers signed a separate document designated "Continuing Guaranty" of payment of said sum on the same date; that this sum was placed to Lewis' credit in that bank and he paid the Security Bank by personal check drawn on that account; that $15,000, plus interest, was repaid to said Bank of America by means of a personal loan obtained by Lewis from the Security Bank, which was evidenced by a series of notes payable to said bank, all of which notes he personally paid, plus interest, without the aid of any funds obtained through the joint venture and that he placed his home as security for $3,000 of this amount; and that he made the last payment on these notes on December 13, 1955.

It does appear, however, that before the Bank of America would make the loan to Lewis, it required some evidence of security. Defendant Firestone claims he discussed these several loans with Lewis and Rogers before they were made; that in order to obtain them, Lewis represented to him the notes were to be considered an obligation of the joint venture; that Lewis also represented to him that before the Bank of America would make the loan it would be necessary for Lewis to show an assignment of Firestone's deed of trust (Kemble) to a one-half interest in the real property; that he gave this trust deed to Lewis and the next day Lewis came back and said the bank required an assignment of it to him; that he did so assign but did not notarize it; that the bank refused to consider it in that form so he notarized it, handed it to Lewis and told him not to record it, but in violation of his agreement and without notice to him, Lewis did record it on January 17, 1955, and did not return it to Firestone, as

agreed. The assignment is dated September 25, 1954, and acknowledged October 20, 1954, and is marked recorded January 17, 1955. On January 26, 1955, Lewis gave notice of foreclosure of the trust deed and the property was subsequently sold at foreclosure sale for $20,000, to one Kelly and plaintiff R. E. Lewis. Appellants claim plaintiffs voluntarily paid off the $15,000 Bank of America note without notice to them.

After trial of these issues a detailed accounting was subsequently had. In general the court found that the note given to the Security Bank was an individual three-way obligation, not a joint venture note, although the proceeds were used for the joint venture and the two nonpaying groups were obligated to reimburse the plaintiffs, payers of said note. Second, that plaintiff Lewis holds legal title to the property (security obtained by foreclosure of the Kemble trust deed), as trustee, to the extent of one-third for appellants Firestone, et al., plus one-third in favor of respondents Rogers, and subject to reimbursement to plaintiff Lewis of the sum of $15,217.50 advanced by him to the benefit of the other parties above named; that the joint venture be dissolved, the property sold, and the proceeds distributed in accordance with their written agreement of joint venture above set out, and according to the contributions of said parties; that certain advances were made by the joint venturers to the joint venture as follows: By R. E. Lewis, $2,690.79; by E. E. Firestone, $545.80; by Harry Rogers, $ 27.50; that the sum of $3,250 has been expended by the joint venture to the credit of Firestone on a personal obligation of Firestone in said amount for a fertilizer bill; that the evidence fails to sustain any interest or value in Firestone of any leases assigned for security purposes or of any value or equity in the pump or sprinkler system or in any options taken by Firestone for the purchase of the Bowline and/or Freeborn liens or claims; and that the evidence fails to sustain any evaluation in the trust deed assigned by Firestone to the joint venture referred to in the contract of the 22nd of July, 1954. An interlocutory judgment was entered accordingly.

Plaintiffs recovered judgment against appellants Firestone et al., for $5,072.50 and against respondents Rogers for $5,072.50. The sale of the joint venture property described in a subsequent decree, was ordered to be had by a commissioner. Subsequently, it was stipulated that the real property

could be withdrawn and said assets sold at private sale for $17,500, in accordance with the terms of an escrow agreement entered into by Ed Kelly and R. E. Lewis, as sellers and one T. L. Jameson as purchaser on April 6, 1956, and the net proceeds received from said sale, together with the promissory note and trust deed of the purchaser, be deposited with the court, to be held pending the results of the appeal taken by appellants Firestone et al.

The first contention of appellants is that findings Number 2 and Number 3, to the effect that the original note given to the Security Bank was a personal note of the joint and several makers to secure a loan and was not a joint venture loan on the part of the joint venture business, were not supported by the evidence, and the further finding that plaintiffs were compelled to and did pay the Security Bank note, entitling them to contribution, was erroneous. The argument is that all the testimony shows that the Bank of America loan, arranged by all the parties, was made to pay off the Security Bank loan; that the oral agreement of the parties to form a joint venture clearly shows that the first note was a part of the joint venture; that since it was conclusively shown that the execution of the Bank of America note and "continuing guaranty" by all the parties was a part of the joint venture agreement and business, it could not reasonably be held that this same situation did not apply to the execution of the Security Bank note; and that as a general rule a personal judgment cannot be entered against a partner in a suit for accounting and settlement until all the firm assets have been converted into money, the debts paid, and a final balance ascertained, citing such authority as *Clark* v. *Hewitt*, 136 Cal. 77 [68 P. 303]; *Shuken* v. *Cohen*, 179 Cal. 279 [176 P. 447]; *Steinberg* v. *Goldstein*, 129 Cal.App.2d 682 [278 P.2d 22]; *Driskill* v. *Thompson*, 141 Cal.App.2d 479 [296 P.2d 834]; and *Nakamura* v. *Kondo*, 65 Cal.App. 211 [223 P. 425].

The evidence in respect to the first part of this contention is susceptible of two different interpretations. There is support for the finding of the trial court on this subject. Apparently all of the parties did have some oral arrangements or understanding as to a method of obtaining the property of the bankrupt estate and the other property and interests indicated. It was necessary for each party to secure a loan in order that this could be accomplished. Each signed the note of the Security Bank as indicated, for the purpose of obtaining the money with which to make the purchase. The

funds were received about one month before the written agreement pertaining to the joint venture was signed. That agreement recites the prior acquisition of the funds for the purpose of acquiring the property therein stated in connection with the joint venture which the parties therein agreed to subsequently carry on for their mutual benefit, and they agreed that said note would be paid from the return of sale of this joint venture. The Security Bank did demand payment of the loan and it fairly well appears that the bank looked to plaintiffs to repay said loan because of the inability of the remaining cosigners to financially respond. The court's finding that the first note executed by the individuals named was separate from the joint venture and constituted an individual transaction to raise funds later used in the joint venture, has evidentiary support. ▆ The rule of law applicable, therefore, is stated in *Bull* v. *Coe,* 77 Cal. 54, 59 [18 P. 808, 11 Am.St.Rep. 235], where it is said:

"It is well settled in this state, as elsewhere, that one partner cannot sue another upon a demand arising out of the partnership transactions in the absence of a settlement of the accounts. But by the terms of this rule it does not apply where the transaction is not a partnership matter."

To the same effect are *Emerzian* v. *Emerzian,* 6 Cal.App. 2d 721 [44 P.2d 656]; *Collins* v. *Meis,* 139 Cal.App. 233 [33 P.2d 472]; and *Johnson* v. *Rosenstein,* 132 Cal.App. 675 [23 P.2d 418].

▆ Next, it is argued that the court failed to find on certain facts and particularly in reference to various allegations of defendants' cross-complaint. It does appear that in the reconstruction of proposed findings by counsel for plaintiffs, by error or inadvertence in the signed findings of September 27, 1957, no finding was actually made in reference to certain paragraphs indicated. Judgment was rendered on the same day. Notice of appeal was filed on November 15, 1957. This error or inadvertence was subsequently, on May 16, 1958, called to the attention of the trial judge. Upon proper showing, on June 13, 1958, the court made an order correcting the signed findings *nunc pro tunc,* due to clerical error or inadvertence, as of the date of the original findings, and found in detail that the allegations of the paragraph in question were either true or not true. The final supplemental judgment was entered November 25, 1957.

▆ It has been held that clerical errors in its records may

140

be corrected by the trial court to speak the truth, even though an appeal has been taken and is pending. (*Crawford* v. *Meadows*, 55 Cal.App. 4, 10 [203 P. 428]; vol. 3, Witkin's California Procedure, p. 1896, § 18.) ▮▮▮ In this case it appears that the original proposed findings were, on September 11, 1957, fully discussed and considered upon objections of the appellants, and counsel for respondents were ordered to prepare findings according to the court's order. No prejudicial error resulted in entering the order *nunc pro tunc.* As thus amended, they sufficiently find on the facts alleged and sufficiently alleviated any claimed ambiguity. Appellants were not prejudiced. (*Petersen* v. *Murphy,* 59 Cal.App.2d 528 [139 P.2d 49].)

There was a sufficient finding that appellants' title should not be quieted against plaintiffs' claim of title. That claim followed a prayer for relief based on the general cause of action alleged in the cross-complaint. The court found that cross-defendants' claim in this respect was without right. The disposition of the first cause of action sufficiently disposed of this additional one in reference to the prayer to quiet title. The findings made necessarily negative the allegations of the cross-complaint as to which specific findings are not made. The findings are sufficient. (*Petersen* v. *Murphy, supra;* *South* v. *Wishard,* 123 Cal.App.2d 642, 650 [267 P.2d 827]; *Culjak* v. *Better Built Homes, Inc.,* 58 Cal.App.2d 720 [137 P.2d 492].)

▮▮▮ Next, appellants attack the finding that Firestone had no interest in and there was no value to the leases assigned for security, or in the pump or sprinkler, or options for purchase of the Bowline or Freeborn liens or claims, and that there was no value in the trust deed assigned by Firestone to Lewis, referred to in the contract of the 22nd of July, 1954.

Although there is some conflict in the evidence, it shows that the leases were not assigned by Firestone but were purchased through the bankruptcy proceedings with joint venture funds, and by their terms had expired, had no value at the time, and were subsequently renewed by Lewis and Kelly. The Freeborn claims and Bowline judgment were actually purchased from funds from the joint venture although there is some evidence that Firestone had made some payments on the pump and sprinkler contract of purchase during his operation of the property. Both had been repossessed by the seller at the time of the joint venture agreement. The only equity Firestone claimed was a claimed oral agreement

to a right to repurchase them at a 10 per cent discount if they were still available. The court found these so-called equities had no value. This finding has evidentiary support.

As to Firestone's claimed one-half interest in the trust deed, a somewhat different question arises. He did purchase this interest by giving Kemble a promissory note in the sum of $11,626.12 for such interest, which note was unpaid. Kemble brought an action on this note and obtained a judgment against Firestone. On March 31, 1958, satisfaction of said judgment was duly entered. In the original finding the court stated that Firestone contributed this one-half interest in the Kemble trust deed to the joint venture although, at the time, it had no evaluation, but concluded that any balance in the joint venture funds after sale, should, in turn, as mentioned, be applied to the retirement of the $11,626.12 note to Kemble on condition that Firestone present satisfaction of the judgment in that action. Such a satisfaction was subsequently filed in this action, as heretofore indicated. The court then found that Lewis held title to the real property therein described, as trustee, to the extent of one-third to appellant Firestone et al., one-third to defendant Rogers, subject to reimbursement to Lewis of $15,217.50 advanced by him to the benefit of said parties. The evidence supports this finding.

Complaint is made to a finding that the joint venture expended $3,250 on a personal obligation of Firestone for fertilizer, the argument being that the written agreement makes this an obligation of the joint venture and not that of Firestone, and that the assumption of that debt by the joint venture was part of the consideration for the agreement and should be paid by it. It is true that neither this agreement, nor the letter of the attorneys in reference to disbursement of the original funds obtained, acknowledged this particular item as a debt of the joint venture but considered together, it did direct that the Bonaventura judgment in the sum of $3,250, plus interest, be paid from the proceeds of the original loan in the order therein specified. There is a notation thereon that this item had been paid from such funds and the evidence indicates it was paid. There is sufficient evidence to indicate that although this was a personal obligation of Firestone, it was a part of the consideration agreed upon whereby Firestone was to turn over to the joint venturers his one-half interest in the trust deed. It would therefore appear that this

sum should not be offset against Firestone in the distribution of the remaining assets. Under the written joint venture agreement (subd. 3) although the Pacific Gas and Electric Company bill in the sum of $5,200 was incurred by Firestone, the only agreement was that ''in the event said property, when acquired, is sold or leased the receipts therefrom shall'' be applied as therein stated, to the payment of this bill. Otherwise it remained a personal obligation of Firestone. That company obtained a judgment against Firestone individually in the full amount of this bill, and it should be paid from the balance of the proceeds of sale, if any, in the order mentioned in the written agreement.

Next, it is argued that the court failed to consider, in the accounting, all items of contribution, losses, debts owing, uncollected claims, and other assets of the joint venture; failed to find on particular items, and also failed to adjust all equities between the parties; that accordingly the way is left open for possible future suits for contribution, citing such authorities as *Griggs* v. *Clark*, 23 Cal. 427; and *Rassaert* v. *Mensch*, 17 Cal.App. 637 [120 P. 1072].

After considering all the evidence above discussed the record affirmatively shows the trial court then questioned counsel for the respective parties as to a further accounting by an accountant of all additional claims to be considered. Counsel stated they could possibly agree on most items, if a copy of the transcript of the evidence previously taken could be furnished them. Such copies were furnished and some form of accounting was submitted to the court which made the findings indicated. Nowhere does it show that there were any losses suffered by the joint venture and its assets were determined. The contributions of the respective parties were set forth. Appellants point to no additional evidentiary matter not considered by the trial court which would support a further finding favorable to appellants which would result in a different judgment. Failure to find on an issue is not ground for a reversal unless it appears there was evidence introduced as to such issue sufficient to sustain a finding in favor of appellants. (*Petersen* v. *Murphy, supra,* p. 534; *Culjak* v. *Better Built Homes, Inc., supra,* p. 725.)

It is next argued that under Corporations Code, section 15018, the rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by certain prescribed rules. Under subdivision (a) thereof:

"Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits."

Subdivision (b) provides that "The partnership must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct of its business, or for the preservation of its business or property."

Subdivision (c) recites: "A partner, who in aid of the partnership makes any payment or advance beyond the amount of the capital which he agreed to contribute, shall be paid interest from the date of the payment or advance."

It is therefore argued that where one joint venturer advanced to the joint venture property which he has acquired with personal funds the other joint venturers having the benefit thereof, should be charged with their share of the value of the property, citing *Boskowitz* v. *Nickel,* 97 Cal. 19 [31 P. 732] ; and that where the property assigned to the joint venture by one joint venturer had value at the time of the assignment but subsequently became worthless and the loss of value occurred while the property was a joint venture asset, such loss should be borne by all of the joint venturers in the proper proportion, citing *Crowley* v. *Thomson,* 41 Cal.2d 636 [262 P.2d 1]. In this connection it is argued that Firestone's contribution to the joint venture are itemized in the written joint venture agreement; that the value as of that time, of the Kemble trust deed and note in the principal sum of $22,575, with interest, plus his interest in the leases and liens, total $12,914.81; that $9,788.07 had been paid on the sprinkler or pump contracts and Firestone was entitled to this credit for his contribution to the joint venture, after dissolution. It should be here pointed out that under section 15018, *supra,* the rights and duties of the partners in relation to the partnership shall be determined according to that section, *subject to any other agreement* between them.

The court found that the written joint venture agreement set forth the rights of the partners and fully provided the manner in which the assets should be distributed. A question therefore arises as to the sufficiency of the evidence to support

this finding. Such finding is not entirely consistent with the facts shown. The court did rely, in part, upon the written agreement in determining the priority of the disposition of the assets of the joint venture after sale. The agreement did not make provision for priority payment of certain allowed claims. It did provide, only in part, for a disposition of the proceeds in case of a voluntary sale. The sale here under consideration was by order of the court and arose out of a dissolution decree. We see no apparent distinction in the sales for the purposes here under consideration. It specifically provided that in case of sale the proceeds should first be applied to the payment of the original note. That note provided for interest. Accordingly, the finding and judgment ordering the first $15,000, plus interest, applied to the repayment of that debt and payment of the judgment obtained in reference thereto on plaintiffs' cause of action, was proper. Since plaintiff Lewis paid this note by means of another personal note to the Bank of America executed by him and by means of another personal loan secured from the Security Bank, which was paid by him, and that plaintiff, as well as other joint venturers, should first recover the principal amount, it would seem reasonable they should also recover interest paid by them respectively on all loans thus made. It then appears, from this interpretation of said written agreement, that the next application of any balance should go toward the retirement of the note to Kemble in the sum of $11,626.12, plus interest. Since a judgment was obtained on that note against Firestone and he fully satisfied it, any payments thereon would be payable to him. It was partly by virtue of this one-half interest in said trust deed that the joint venturers had any money to pay the above obligations. Firestone should therefore be reimbursed in accordance with the priority agreed upon in the written agreement without any conditions attached. It appears that under the evidence no balance would then remain. The next application of the balance, if any, would be applied to the payment of the Pacific Gas and Electric Company bill in the sum of $5,200. The court should first have considered the provisions of the written agreement, in respect to priority of payments and, if any balance did remain section 15018 of the Corporations Code would govern as to the priority of the other payments, including other contributions of the joint venturers. The findings and judgment should be modified accordingly.

The judgment, insofar as it is not inconsistent with the conclusions here reached, is affirmed. The remaining portion of the judgment is reversed and the court is directed to make proper findings and enter judgment in accordance with these conclusions. Each party to pay his own costs on appeal.

Mussell, J., and Shepard, J., concurred.