[Civ. No. 18383.   First Dist., Div. One.   Feb. 9, 1960.]

DOUGLAS R. PRINCE et al., Respondents, v. LESTER E. HARTING, Appellant.

722

Montgomery & Jorgensen for Appellant.

Jensen & Zavlaris and Peter B. Zavlaris for Respondents.

DUNIWAY, J.—In this action for dissolution of two partnerships, an accounting and damages designated as "secret profits," plaintiffs had judgment and defendant appeals.

He does not claim that the evidence does not support the findings. His complaints are that the findings do not support the judgment in certain respects and that in any event the money judgment entered against him is improper because, as yet, the final balance has not been determined in the partnership accounting.

## THE FACTS FOUND

An understanding of appellant's points requires that we set out the principal facts found by the court, supplemented, where we deem necessary, by the evidence behind the findings.

The defendant Lester E. Harting ("Lester") has a brother Wesley A. Harting ("Wesley"). Lester lived at Monterey; Wesley lived in Kansas City, Missouri, where he was a business opportunity broker. Sometime before September 21, 1951, the two brothers entered into a conspiracy to create for themselves an "opportunity," by obtaining money from and making secret profits at the expense of, the plaintiffs, through inducing them to enter a partnership with Lester. The partnership was to be the body from which the conspirators proposed to draw their sustenance. Plaintiffs had little money, but did have a source from which they could borrow, and the brothers knew this. As an inducement to have the plaintiffs enter into the partnership with Lester, Lester made numerous fraudulent representations to the plaintiffs and others. Some (but by no means all) of these representations were: Lester was in contact with a syndicate of wealthy men in Kansas City (the University Testing Laboratories of Missouri, a corporation) which had been for some time organized to promote and assist various types of business enterprises, and it was interested in expanding to the west coast in the soft water business. It had acquired patents and processes for a water softener system that was superior to anything then on the market, had formed the United States Soft Water Company as a division of the corporation, and had between 300 and 400 dealers in the eastern and midwestern United States. It manufactured all of its materials and equipment and sold the same to these franchise dealers. It had an engineer, L. C. Lind, who had engineered and developed other well known water softening systems. The syndicate had offered Lester a franchise for the 11 western states, without cost.

The representations were false. There was no syndicate. The Missouri corporation was a shell, formed on June 16, 1951, with an initial capital of $500, owned 50 per cent by

Wesley, 49 per cent by Wesley's wife, and 1 per cent by a third person. It was Wesley's *alter ego* and the United States Soft Water Company was a mere shadow of a shell, being a "division" of this corporation. It had substantially no dealers. Lind was an independent manufacturer, and had no connection with the Kansas City operation of Wesley, which owned no patents or processes and did no manufacturing or assembling whatsoever.

Induced by the fraudulent representations, the plaintiffs entered into a partnership with Lester on September 21, 1951, the stated purpose being to conduct a soft water business and distributorship in the 11 western states. Plaintiffs had no previous experience in the business. They borrowed money to help finance it. Each of the partners had a one-third interest in the partnership and its profits or losses. On December 31, 1952, the plaintiff Prince withdrew and the plaintiff Powers, with Lester, continued the business in partnership until May 16, 1957. The two remaining partners each had a 50 per cent interest in the partnership and its profits and losses.

The conspiracy—and a campaign of deception and concealment—continued. About October 1, 1951, the Monterey partnership placed an initial order for water softening equipment with Wesley's *alter ego*, forwarding $53,908.33 to the Kansas City corporation. However, the money was placed by Lester and Wesley in a partnership commercial account with a bank in Kansas City, the two of them being the partners. There was testimony by several witnesses that they were told by Wesley and by Lester that Wesley and Lester were partners in the Kansas City business. The plaintiffs were later told that Wesley had an interest (undefined) in the Kansas City operation, but were not at any material time told, nor did they learn, that any of the fraudulent representations were false. Indeed this small gobbet of truth appears to have been artfully dropped into the ken of the plaintiffs as "mere corroborative detail, intended to give artistic verisimilitude to a bald and unconvincing narrative." (Gilbert, "The Mikado," Act II, Mod. Lib. Ed., p. 49.) Among various things that were not disclosed to plaintiffs were that Lester was receiving commissions from the Kansas City operation for sales of equipment to the Monterey partnership, that the plaintiffs could have purchased direct from Lind at much lower prices than they paid to the Kansas City operation, that the latter was a dummy company organized to obtain secret

profits from the Monterey partnership, and that its sole function was to buy equipment from Lind with money advanced by the Monterey partnership and to sell such equipment to the Monterey partnership at much higher prices.

The court specifically found that the conspiracy continued after the Monterey partnership was formed, during the existence of the partnership and at all times pertinent to the case. The evidence shows that both Wesley and Lester used "high pressure" methods to persuade the Monterey partnership to place large orders with the Kansas City operation of the conspirators. It also shows that they were both active and astute in seeing to it that plaintiffs did not learn the truth.

The court found that the first Monterey partnership forwarded to the Kansas City operation for the purchase of equipment the total sum of $245,682.74; that equipment was purchased from Lind at a cost of $138,045.66, giving the conspirators a profit of $107,637.08; that in addition, there was forwarded $53,898 for the purchase of resin, which was purchased from a supplier for $42,483.45, giving the conspirators profit of $11,415.55; and that the total profit which the conspirators made at the expense of the Monterey partnership is thus $119,052.63. (The correct figure would be $119,051.63.)

## THE JUDGMENT

The court made an interlocutory decree whereby it appointed a firm of certified public accountants to state an account of the dealings between the three partners to and including December 31, 1952, and the two partners thereafter. Such an account was rendered and on the basis thereof the court found that the plaintiff Prince was entitled to a total of $54,855.89, with interest at 7 per cent from May 16, 1957, this being made up of his capital account, as augmented by his share of diverted profits, a note payable to him which was given by the remaining partners when he withdrew from the partnership, and accrued interest on the note and on his one-third share of the moneys of which the partnership had been deprived by the conspirators. The court also found that the plaintiff Powers was entitled to a dissolution of the partnership with Lester, effective May 16, 1957. Pursuant to the account stated between those two partners, it gave to the defendant Lester credit for various advances, expenses, etc., in the sum of $31,863.57. Appellant does not assail the correctness of any of these figures.

The accounting and decree were based upon the court's de-

termination that Lester owed the partnership, as of May 16, 1957, a total sum of $155,493.60, this being the amount by which the partnership had been defrauded, with interest to May 16, 1957. It rendered a judgment in favor of the two plaintiffs "on behalf of the first" partnership, against Lester for this amount, with interest thereon from May 16, 1957, until paid. It directed Powers to wind up the affairs of the second partnership. It gave Prince, as the partner who had retired from the first partnership, a lien upon the second partnership for the moneys due him. It then directed Powers, in winding up the second partnership, to liquidate all of the firm's assets, collect its accounts receivable, settle its liabilities, and at the completion of the winding up, divide the remaining assets, if any (or the remaining debts, if any), one-half to the plaintiff Powers and one-half to the defendant Lester. It also awarded plaintiffs their costs against Lester.

## The Findings Support the Judgment

Lester attacks the judgment on several grounds. He asserts that there is no finding of any act done in furtherance of the conspiracy causing damage to the plaintiffs and that in any event there is no finding on the basis of which defendant could be charged with the entire loss. He also asserts that the court erred in concluding that Lester was jointly and severally liable with Wesley. We find no merit in these contentions.

A partner (here, Lester) is a trustee for his copartners. (Corp. Code, § 15021.) ▇ "Partners are trustees for each other, and in all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his copartner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind (Civ. Code, §§ 2410, 2411). ▇ A partner has no right to deal with partnership property other than for the sole benefit of the partnership (*Koyer* v. *Willmon*, 150 Cal. 785 [90 P. 135])." (*Llewelyn* v. *Levi*, 157 Cal. 31, 37 [106 P. 219].) There are many other cases to the same effect, and the principle is universally recognized and applied, both in California and in other states. (37 Cal.Jur.2d, Partnership, § 46, p. 613; 68 C.J.S., Partnership, § 76, p. 516.)

▇ In this case, Lester has flagrantly violated his fiduciary duties. "A partnership is an association of two or more persons to carry on as co-owners a business for profit." (Corp. Code, § 15006, subd. (1).) This partnership was formed to

buy water softening equipment and resell it at a profit. Lester and his brother, by fraud, inserted between the partnership and the source of supply a dummy middleman, falsely represented to be itself the source of supply, organized by one of them and designed to be used for that purpose. Thereby they made for themselves the very kind of profit that the co-partnership was designed to make, and to that extent reduced the possibility of profit to the partnership. Equity will not tolerate such a transaction, but will require the conspirators to make good the entire profit of which the partnership has been deprived.

It is urged that Wesley owed no fiduciary duty to plaintiffs, but had a right to buy from others at a low price, and sell to the Monterey partnership at a high price, and that this justification of Wesley's conduct as one of the conspirators excuses the conduct of Lester, the other conspirator. This is strange doctrine, coming from Lester, who was the fiduciary, and completely disregards the nature of his duties.

Since Lester and Wesley conspired to get the plaintiffs into business with Lester for the purpose of realizing for themselves profits at the expense of the plaintiffs, they are both responsible, under well established principles, for the entire loss suffered by the plaintiffs. (Wesley was named a defendant, but jurisdiction of his person could not be obtained.) We quite agree with appellant that the gist of an action charging a conspiracy is not the conspiracy but the damages suffered. However, it is equally well established that if plaintiff proves that he has been damaged, and that defendant conspired with another to damage him, each conspirator is liable jointly and severally with his co-conspirator for the entire loss suffered. This is essentially what the court found here.

The leading case is *Mox Incorporated* v. *Woods*, 202 Cal. 675 [262 P. 302], where the court laid down the rule as follows: "The cause of action is the damage suffered. . . . The advantage gained in charging a conspiracy is that the act of one during the conspiracy is the act of all if done in furtherance thereof, and thus defendants may be held liable who in fact committed no overt act whatsoever and gained no benefit therefrom." (Pp. 677-678.) There are many cases in accord. In *Lomita Land & Water Co.* v. *Robinson*, 154 Cal. 36 [97 P. 10, 18 L.R.A. N.S. 1106], the promotors of a corporation, conspiring with each other, sold property to it at a price far higher than its cost to them. Each was held liable for the full amount, though none received all of the profit.

In *Anderson* v. *Thacher,* 76 Cal.App.2d 50 [172 P.2d 533], an action to recover secret profits, one of the three conspirators received no part whatever of the profit, but was held jointly liable with the others for the full amount of the loss. Here we need not go so far. Lester was an active participant in the fraud, and got between a third and a half of the profits—perhaps more—for himself. Under the authorities hereafter considered, he would be liable for the entire loss even in the absence of a conspiracy; the conspiracy merely makes his liability more obvious.

Appellant objects to the damages awarded on two inconsistent grounds. His first contention appears to be that the cause of action is one for fraud and deceit in the purchase or sale of property, to which Civil Code, section 3343, applies, and that the evidence does not sustain the finding of damage as measured by the rule stated in that section. He does not, and cannot, contend that the value of that with which the partnership parted, namely, money, is not established. But he does contend that the "actual value" of the goods received has not been established. The price paid for the goods by the conspirators has been established, and that in itself is evidence of their value. (*Union Hollywood Water Co.* v. *Los Angeles,* 184 Cal. 535, 538 [195 P. 55]; *Yoakam* v. *Hogan,* 198 Cal. 16, 20 [243 P. 21]; *Fishel* v. *F. M. Ball & Co., Inc.,* 83 Cal.App. 128, 135 [256 P. 493]; *Bagdasarian* v. *Gragnon,* 31 Cal.2d 744, 755 ff. [192 P.2d 935], and cases there cited.) It is difficult to conceive of more persuasive evidence in a case such as this, where the price was paid in the very transaction whereby the Monterey partnership finally acquired the goods. Thus the finding as to damage is proper if Civil Code, section 3343, were held to apply to this case. However, we hold that it does not.

His second contention is that this is not an action for fraud and deceit, but for secret profits, so that defendant can be held liable only for the amount of the partnership's money actually traced into his pockets. He seems to concede that over $44,000 was so traced. We agree that this is not an ordinary action between vendor and purchaser for fraud and deceit. But the conclusion for which appellant contends does not follow. Neither is this an ordinary action for unjust enrichment, based upon the theory of money had and received, even though the complaint speaks of "secret profits." It is an action by partners against a partner, for fraudulent breach of the fiduciary duty owed by him to them. We think that such a

fraudulent breach is a tort, long recognized by the courts of this state, and one to which Civil Code, section 3343, does not apply. The books are full of decisions involving breaches of fiduciary duties of various sorts, and we will not here attempt to review even a small part of them. Through them all runs one common thread—a determination that the faithless fiduciary shall make good the full amount of the loss of which his breach of faith is a cause. The theories announced are as various as the remedies available, but the result is always the same, except in those cases where the plaintiff has himself failed to seek the maximum relief that he would be entitled to obtain. We consider only the more recent cases.

In *Simone* v. *McKee*, 142 Cal.App.2d 307 [298 P.2d 667], this court had before it a case involving the fraud of a real estate broker, the complaint being in the form of the ordinary action for deceit. The fraud of the broker consisted in his telling his client that the best offer he could get for the client's property was $13,000 when in truth he had an offer of $17,000. The client sold for $13,000 and sued for the difference. It was urged on appeal by the broker that Civil Code, section 3343, applied. Mr. Presiding Justice Peters replied: "All of the cases cited in support of this rule are cases between a vendor and vendee. None of them involve[s] fraud by a fiduciary. As to such cases the much broader provisions of sections 3333 and 1709 of the Civil Code are applicable." (P. 315.)

*Ward* v. *Taggart*, 51 Cal.2d 736 [336 P.2d 534], was an action for fraud against a real estate broker who was not plaintiff's agent, but dealt with him at arm's length. The fraud was ingenious, and gave the broker a large profit which the plaintiff would have had if the broker had been honest. Under the peculiar facts, plaintiff could recover a large sum on the theory that the broker had been unjustly enriched, while he could recover nothing under the rule of Civil Code, section 3343. Mr. Justice Traynor upheld a judgment for the plaintiff, relying upon Business and Professions Code, sections 10150 and 10176, imposing a duty of honesty upon a broker, and holding that Civil Code, section 3343, did not apply. Moreover, while the basis for the recovery was unjust enrichment, it was held that the wrong committed was a breach of an obligation imposed by law, so that exemplary damages could be recovered under Civil Code, section 3294. Such a breach of obligation falls under the classic definition of a *tort*. (*Denning* v. *State*, 123 Cal. 316, 328 [55 P. 1000]; *Hallidie* v. *Enginger*, 175 Cal. 505, 507 [166 P. 1]; *Markwell* v.

*Swift & Co.*, 126 Cal.App.2d 245, 250 [272 P.2d 47].) Mr. Justice Traynor also recognized (pp. 740-741) that Civil Code, section 3343, does not apply in cases in which "the defendant was the agent of the defrauded person or in which a confidential or fiduciary relationship existed between the parties."

In *Crogan* v. *Metz*, 47 Cal.2d 398 [303 P.2d 1029], plaintiff recovered a *joint* judgment against two agents of hers based upon a fraud whereby, between them, they made a secret profit at her expense. The court upheld the judgment, on a theory of quasi-contract, unjust enrichment, even though there was no showing as to how much of the profit went to each, and held that Civil Code, section 3343, did not apply. Accord: *Ramey* v. *Myers*, 111 Cal.App.2d 679 [245 P.2d 360]. In *Savage* v. *Mayer*, 33 Cal.2d 548 [203 P.2d 9], the Supreme Court also held that Civil Code, section 3343, does not apply to an action against a faithless agent for secret profits. In that case, however, all of the profit, so far as appears, was retained by the agent.

It has long been the law in this state that a faithless fiduciary must repay to the beneficiary of his fiduciary duties the entire profit that he has caused the beneficiary to lose. (*King* v. *Wise*, 43 Cal. 628, 634, 635; *Langford* v. *Thomas*, 200 Cal. 192, 196 [252 P. 602].) As Mr. Justice Sullivan stated in the latter case, "Cases to like effect covering the intervening years might be multiplied indefinitely, but it would be a work of supererogation." (P. 198.) It is true that in many cases, including the two last cited, the agent himself got all of the profit, and it could be recovered from him in an action in quasi-contract, for money had and received, to which Civil Code, section 3343, does not purport to apply. But it is also true that it has been the law for many years that the fraudulent fiduciary, where he has had the active assistance of persons who owe no fiduciary duty to the plaintiff and has split the swag with them, is nevertheless liable for the entire amount, as are his coconspirators. (*Lomita Land & Water Co.* v. *Robinson, supra*, 154 Cal. 36; *Anderson* v. *Thacher, supra*, 76 Cal.App.2d 50.)

Under the authorities cited above, Civil Code, section 3343, has not changed this rule. "It is not difficult to arrive at the exact measure of damages which the plaintiffs are entitled to recover. The actual value of the land is not an element in the estimate. The plaintiffs should have, from the defendant, the difference between the price of the land purchased by him for the plaintiffs and the amount paid by the

732

plaintiffs.'' So held the Supreme Court in an action by a principle against a faithless agent. (*King* v. *Wise, supra,* 43 Cal. 628, 634, 635.) The same rule applies here.

As a separate point, appellant complains that the court rendered a judgment against him as a joint tort feasor after making rulings on evidence rejecting a joint tort theory of the case. However, we find nothing in the record indicating that anything that the court said or did prevented the appellant from presenting whatever evidence he desired to present, and counsel in his brief does not point to any evidence that Lester might have produced but was prevented from producing by the court's rulings. The only statement of the court that appellant cites was merely a comment by the court in a colloquy with counsel for plaintiffs just after it had sustained an objection by appellant to certain testimony offered by plaintiffs in support of their charge of fraud, on the ground that the excluded evidence was cumulative. The cited comments of the court were not a ruling on anything.

Appellant asserts that he made no attempt to show lack of damage because damages were not alleged. The complaint alleged that from September 20, 1951, to the date of filing of the complaint a sum in excess of $255,000 was forwarded by the Monterey partnership to the Kansas City operation, that the cost to the Kansas City operation of the items purchased was about $140,000 and that the secret profits to Lester and Wesley pursuant to the conspiracy amounted to a sum in excess of $115,000. This is precisely the theory upon which the court rendered judgment against Lester. He can hardly now complain that he was not aware of the basis of plaintiffs' case and did not have an opportunity to meet it.

THE COURT PROPERLY ENTERED A MONEY JUDGMENT

Ordinarily, partners must proceed against each other by an action for an accounting. (*Mosher* v. *Helfend,* 7 Cal.App.2d 48, 51 [44 P.2d 1050], and cases there cited.) That is what plaintiffs have done. It has been the general rule in this state for many years that: ''Partners cannot sue one another at law for any breach of the duties or obligations arising from that relation. This can only be done in chancery by asking a dissolution and accounting, and, if damages accrue from any cause in such proceeding, they must be adjusted by some appropriate method in that tribunal. (*Stone* v. *Fouse,* 3 Cal. 292.) Equity does nothing by halves, but gives full relief in such cases. When it undertakes to adjust the differences between partners, it adjusts them all. 'The whole

subject matter in controversy between the parties, which includes all the partnership transactions of each and all the partners, is the subject of the adjudication, and the account and decree must include all these matters, and leave nothing open for future litigation or controversy. Equity will not adjudicate causes piecemeal.' " (*Bremner* v. *Leavitt*, 109 Cal. 130, 132-133 [41 P. 859].) In *Smith* v. *Blodget*, 187 Cal. 235, 242 [201 P. 584], an action by a principal against an agent for an accounting of secret profits in which third party conspirators were joined as defendants, and judgment was rendered against them all, the court held: ''An action for an accounting lies within the jurisdiction of equity, among other instances, in cases of fraud as well as where there is a fiduciary relation between the parties and the facts are peculiarly within the knowledge of one. (2 Pomeroy's Equity Jurisprudence, § 910; 4 Pomeroy's Equity Jurisprudence, § 1421.) Having once taken jurisdiction, the court will grant further relief demanded by the situation and necessary to complete justice.''

Before a full accounting could be had in the present case, it was necessary for the court to determine whether the partnership had a valid claim against Lester, and the amount of that claim. It developed, not only that the partnership did have a valid claim, but also that the claim is the major remaining asset, the partnership, not surprisingly, having proved unsuccessful. The judgment is in favor of the plaintiffs ''on behalf of'' the partnership. It is the partners who are normally responsible for winding up partnership affairs. However, in the peculiar circumstances of this case, Lester and his brother having induced the formation of the partnership by fraud and having obtained from it large sums of money by fraud, the court properly placed the winding up of the second partnership in the hands of plaintiff Powers alone. (Corp. Code, § 15037.)

 It has been repeatedly stated by our courts that in an action for an accounting between partners, it is ordinarily not proper to enter a money judgment in favor of one against the other until the assets have been liquidated and the creditors paid, at least to the extent of the assets realized upon, and a final balance struck.  There are said to be two reasons for the rule. The first is that, as between partners, the moneys due to one of them must first come from the partnership assets, the liability of the other being residual. Here, the other assets are insufficient to pay the creditors; there may be no residue, even if Lester pays in

full, with interest. The second is that the decree is not binding on the creditors, so that the defendant partner, if compelled to pay the plaintiff, may find himself forced to pay the creditors, thus being subjected to a double liability. Here, the creditors cannot be paid unless and until Lester pays. If it should, by good luck, turn out that his payment is more than is necessary to pay the creditors and his defrauded partners, he gets the excess back under the terms of the judgment. Powers will hold what he collects from Lester, on behalf of the partnership, subject to an express provision of the judgment to this effect. By reason of his own conduct, Lester should be entitled to no greater protection than this.

In the following cases, the rule was actually applied: *Griggs* v. *Clark* (1863), 23 Cal. 427 (partnership dissolved by death; no secret profits involved; debts not provided for; money judgment against surviving partner reversed); *Black* v. *Merrill* (1884), 65 Cal. 90 [3 P. 113] (fraud of one partner; no accounting below; held there must be an accounting before a money judgment can be rendered); *Clark* v. *Hewitt* (1902), 136 Cal. 77 [68 P. 303] (no fraud or secret profits; money judgment for one partner reversed where court failed to provide for disposition of some partnership property); *Albery* v. *Geis* (1905), 1 Cal.App. 381 [82 P. 262] (similar to and follows *Clark* v. *Hewitt, supra*); *Durphy* v. *Pearsall* (1907), 6 Cal.App. 54 [91 P. 407] (reversed because accounting not complete); *Rassaert* v. *Mensch* (1911), 17 Cal.App. 637 [120 P. 1072] (no fraud, no secret profits; decree reversed because there was one outstanding debt, not paid, so that losing partner might be subjected to double liability); *Clement* v. *Duncan* (1923), 191 Cal. 209 [215 P. 1025] (sole asset of partnership was corporate stock; held, error to enter money judgment; court should have either divided the stock or had it sold and divided proceeds; no fraud or secret profits); *Nakamura* v. *Kondo* (1924), 65 Cal.App. 211 [223 P. 425] (no fraud or secret profits; no debts; not all assets disposed of; held, money judgment not proper); *Olmo* v. *Olmo* (1943), 56 Cal.App.2d 590 [133 P.2d 866] (fraudulently induced settlement between partners; held money judgment for one partner improper where debts not paid and assets not sold; no insolvency); *Sausser* v. *Barrack* (App. Dept., Superior Ct. 1954), 123 Cal.App.2d Supp. 948 [266 P.2d 231] (rule applied where no accounting had).

In most of the cases that have considered the rule, however, it was not in fact applied. These cases are: *Harper* v.

*Lamping* (1867), 33 Cal. 641 (no debts; court divided assets in kind; held proper); *Stower* v. *Kamphefner* (1907), 6 Cal.App. 80 [91 P. 424] (all assets liquidated and liabilities marshalled before judgment; affirmed); *Spencer* v. *Barnes* (1914), 25 Cal.App. 139 [142 P. 1088] (no debts, no assets except money; judgment for secret profits against defendant; held, no formal dissolution or accounting necessary); *Shuken* v. *Cohen* (1918), 179 Cal. 279 [176 P. 447] (dissolution induced by fraud; no liabilities; some property distributed in kind, held proper); *Freeman* v. *Donohoe* (1922), 188 Cal. 170 [204 P. 593] (dictum); *Wilson* v. *Brown* (1929), 96 Cal.App. 140 [273 P. 847] (defendant partner converted assets of partnership; no debts; held, money judgment proper); *Vasiljevich* v. *Radanovich* (1934), 138 Cal.App. 97 [31 P.2d 802] (no fraud, no debts; held, division of assets in kind is proper); *Watterson* v. *Knapp* (1939), 35 Cal.App. 2d 283 [95 P.2d 154] (no fraud or secret profits; only assets, real property, subject to obligations not then payable; held, division in kind, subject to liabilities, is proper); *Peebler* v. *Olds* (1942), 56 Cal.App.2d 8 [132 P.2d 233] (no debts, judgment for money and for sale of remaining assets and division of proceeds affirmed); *Swarthout* v. *Gentry* (1943), 62 Cal.App.2d 68 [144 P.2d 38] (no debts; held proper to divide real estate in kind); *Laughlin* v. *Haberfelde* (1946), 72 Cal.App.2d 780 [165 P.2d 544] (similar to *Wilson* v. *Brown, supra*); *Hooper* v. *Barranti* (1947), 81 Cal.App.2d 570 [184 P.2d 688] (dictum; accounting denied where partnership was for an illegal purpose); *Hammer* v. *White* (1949), 90 Cal.App.2d 443 [202 P.2d 1029] (similar to *Spencer* v. *Barnes, supra*); *Steinberg* v. *Goldstein* (1954), 129 Cal.App. 2d 682 [278 P.2d 22] (receiver appointed pending accounting; ordered to permit defendant partner to use certain assets, the latter to pay the partnership for their use; affirmed); *Driskill* v. *Thompson* (1956), 141 Cal.App.2d 479 [296 P.2d 834] (partner converted assets, and judgment against him affirmed, though action was for an accounting; error, if any, held harmless); *Steinberg* v. *Goldstein* (1956), 145 Cal.App. 2d 692 [303 P.2d 80] (see same case, *supra*; order modified to require partner to pay receiver; affirmed); *Lewis* v. *Firestone* (1959), 170 Cal.App.2d 129 [338 P.2d 953] (dictum).

It is apparent that none of the foregoing cases is quite like the present case, either on its facts or in the relief granted, and as has been noted, a majority of them are in fact exceptions to the rule stated. In this case the liabilities

of the partnership greatly exceed the assets, if we disregard Lester's liability for secret profits, so that the creditors cannot be paid off except by the use of moneys to be collected from him. It is at least doubtful whether there will be enough to pay the creditors in full, even if Lester pays in full, as the collectibility of the accounts receivable and the value of the remaining assets are questionable. Moreover, in this case there has been a full accounting, although the remaining assets have not yet been liquidated and applied to the firm's debts. In addition, the judgment here is on behalf of the partnership and was obviously so framed in order to enable the plaintiffs, who are entitled to wind up the partnership affairs, to collect this asset along with others, in order that the partnership may be fully wound up.

We hold that, under the circumstances, the judgment, as far as it goes, is proper. The courts have recognized the difference between an award in favor of a *partner* and one in favor of a *partnership*. (*Williams* v. *Williams* (1894), 104 Cal. 85 [37 P. 784]; *Steinberg* v. *Goldstein, supra,* 129 Cal. App.2d 682, *idem,* 145 Cal.App.2d 692.) The first Steinberg case upholds an order that a *partner* pay moneys to the *partnership*; the second upholds an order that he pay the receiver. Plaintiffs as liquidators of the partnerships are in a comparable position to that of a receiver.

It has been held that, where a partner converts the partnership assets, the injured copartner may bring an action at law instead of an action for an accounting, although he could also bring the latter type of action. (*Crosby* v. *McDermitt* (1857), 7 Cal. 146; *Moropoulos* v. *C. H. & O. B. Fuller Co.* (1921), 186 Cal. 679 [200 P. 601]; *Wilson* v. *Brown, supra* (1929), 96 Cal.App. 140; *Johnstone* v. *Morris* (1930), 210 Cal. 580 [292 P. 970]; *Laughlin* v. *Haberfelde, supra* (1946), 72 Cal.App.2d 780; *Driskill* v. *Thompson, supra* (1956), 141 Cal.App.2d 479; *Barlow* v. *Collins* (1958), 166 Cal.App.2d 274 [333 P.2d 64]; *Chatten* v. *Martell* (1958), 166 Cal.App.2d 545 [333 P.2d 364].) These cases recognize a distinction between ordinary breaches of the partnership agreement and frauds and other torts of various kinds, which are not really "partnership" transactions. Here, one part of the relief sought was for moneys of the partnership fraudulently diverted by defendant and Wesley from the partnership into their own pockets. Another part was for an accounting of the partnership affairs and the dissolution and winding up of the partnership. (*Cf.* Corp. Code, §§ 15038,

subd. (2), 15039.) It was proper to combine both causes of action in one action in equity. (*Greenwood* v. *Mooradian* (1955), 137 Cal.App.2d 532, 545-546 [290 P.2d 955].)

And a court of equity has broad powers to frame its decree so as to afford full and adequate relief as may be required by the particular circumstances of the case. (*Jaffa* v. *Guttman* (1959), 175 Cal.App.2d 790 [346 P.2d 876]; *cf. Bisno* v. *Sax* (1959), 175 Cal.App.2d 714, at p. 728 ff. [346 P.2d 814], and cases cited, *supra.*)

In other states, money judgments have been upheld, in advance of final settlement of the partnership affairs, under somewhat analogous circumstances. (*Apple* v. *Smith,* 106 Kan. 717 [190 P. 8] and 105 Kan. 732 [185 P. 903]; *Holt* v. *Peters* (1933), 17 Tenn.App. 239 [66 S.W.2d 1017]; *Oustad* v. *Hahn* (1914), 27 N.D. 334 [146 N.W. 557].)

We think that the court properly exercised its powers here. However, in order that all parties may be fully protected during the winding up of the partnership, and that the rights of all may be fixed at its conclusion, we think that the court should have retained jurisdiction to make such further orders, incidental to the carrying out of its decree, as may be proper, as was done in *Zappettini* v. *Buckles* (1914), 167 Cal. 27 [138 P. 696].

It is therefore ordered that the judgment be modified by inserting at the end thereof a new paragraph 4, as follows:

"4. The Court retains jurisdiction to make such further order or orders as may be necessary or proper to carry this judgment into effect."

As so modified, the judgment is affirmed, respondents to recover their costs on appeal.

Bray, P. J., and Tobriner, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 30, 1960.