JACK LOEKS ENTERPRISES, Inc. v. W. S. BUTTERFIELD THEATRES, Inc. et al.

No. 7839.

United States District Court
E. D. Michigan, S. D.

June 30, 1952.

6

Lucking, Van Auken, Schumann & Greiner, Detroit, Mich., Russell C. Ashmore, Detroit, Mich., for plaintiff.

John W. Babcock, Detroit, Mich., Ballard, Jennings, Bishop & Ellsworth, Lansing, Mich., Rockwell T. Gust, Detroit, Mich., Warner, Norcross & Judd, Grand Rapids, Mich., for defendants.

KOSCINSKI, District Judge.

Plaintiff's fifth amended motion for production of documents by four of the above named defendants, W. S. Butterfield Theatres, Inc., Butterfield Michigan Theatres Company, Bijou Theatrical Enterprise Company, and B & J Theatres, Inc., is now before the court.

The original complaint filed herein charges the existence of a continuing conspiracy by defendants, contrary to the provisions of the Sherman and Clayton Anti-Trust Acts, 15 U.S.C.A. §§ 1–7, 15 et seq., to illegally maintain a monopoly of the system of releasing motion picture films in the Grand Rapids area in which both plaintiff's and defendants' theatres are located. A broad demand for production of documents was allowed on plaintiff's first motion to produce, based on allegations in the complaint.

The second amended complaint, which forms the basis for the present motion, reiterates in substance the allegations in the original complaint but the charges of conspiracy are extended to defendants' operations within the entire State of Michigan and beyond, and plaintiff now seeks to compel production by defendants of documents

relating to all theatres within that area operated by these defendants.

The mere enumeration in the motion of categories of records absorbs more than five typewritten pages. It is difficult to conceive the existence of any paper preserved by these defendants in their files, which plaintiff's motion would not encompass.

■ Plaintiff relies on the previous order of this court as the law of the case but no such interpretation may be placed on that order, framed as it was, to meet plaintiff's needs in preparation for trial on the issues raised in the original complaint. There is a radical departure in the last complaint on file since the scope of the conspiracy is extended beyond the area of immediate competition, and different legal principles must be invoked. While extreme liberality may have been warranted in directing production of documents necessary to establish the existence of a conspiracy within the immediate area of competition, it does not follow that the same liberality must be exercised in considering plaintiff's present demand for production of documents relating to theatres beyond that area.

■ Objections to granting of the motion were filed by all but one of these defendants, the Bijou Theatrical Enterprise Company, which answers plaintiff's motion by the affidavit of Byron L. Ballard, one of the attorneys for and an officer of defendant companies. Ballard's affidavit alleges that defendant, Bijou Theatrical Enterprise Company, does not operate any theatres and its business in no way includes any transactions in buying, selling, renting, or exhibiting of films; that it neither owns, leases, or operates any theatres in the City of Grand Rapids and its assets consist only of stocks, bonds, real estate, and leases, and its income is derived entirely from dividends, interest, and rentals. The affidavit explains the present stock ownership; the bulk of the stock is held by the Estate of W. S. Butterfield, deceased, while negligible portions are owned by two other stockholders. Since the gist of this action is a conspiracy consisting of illegal agreements and arrangements among defendants as to

allocation of territories for distribution and exhibition of motion picture film over the entire United States by which defendants are given preference and priority through a system of releasing motion picture films, the corporate documents of the Bijou Theatrical Enterprise Company would bear little, if any, relation to the subject-matter of this suit and the motion will be dismissed as to that defendant, without prejudice to a renewal of the demand if plaintiff can controvert the facts alleged in Ballard's sworn affidavit.

Grounds for objections filed by the remaining defendants are (1) that the showing of good cause to support the motion is insufficient; (2) that the real subject-matter of the complaint limits the course of discovery to records of theatres actually competing with plaintiff's theatre and specification of such competing theatres; (3) that granting of the motion as made would be an unfair and unwarranted abuse of process of this court; (4) that granting of the motion as made would be an unreasonable search and seizure of defendants' papers, in violation of their constitutional rights, and would deprive them of liberty and property without due process of law; (5) that the records would compel disclosure of private and confidential data without any sufficient supporting showing; (6) that the motion as made compels disclosure of confidential memoranda of counsel; and (7) that it would compel exhibition of private papers and effects of persons not parties to the suit, in violation of their constitutional rights.

■ The first objection deals with the sufficiency of plaintiff's showing of good cause. Quoting from Vol. 4, Moore's Federal Practice, 2d Ed., p. 2449, "The party seeking inspection is required to show 'good cause therefor.' Considerations of practical convenience should play the leading role in determining what constitutes good cause. * * * There should be a showing that the documents sought to be inspected will in some way aid the moving party in preparation of his case; that the documents are relevant to the issues; that the

moving party must establish his claim or defense by documents, most of which are in the adverse party's possession; or that denial of production would unduly prejudice the preparation of the party's case or cause him hardship or injustice." The principles are discussed in Gordon v. Pennsylvania R. R. Co., D.C., 5 F.R.D. 510; United States v. Five Cases, D.C., 9 F.R.D. 81, affirmed 2 Cir., 179 F.2d 519; Hickman v. Taylor, 329 U.S. 495, 509, 67 S.Ct. 385, 91 L.Ed. 451, and many others.

■ It is not necessary in an anti-trust action to set out in detail the acts complained of nor the circumstances from which plaintiff draws his conclusion that violations of acts of Congress have occurred and that plaintiff had been damaged. Brownlee v. Malco Theatres, D.C., 99 F. Supp. 312. The very nature of a conspiracy is such that details of the acts which constitute it are usually unavailable or unknown to plaintiff until resort is had to discovery. For this reason courts have admittedly construed and interpreted the purpose of the discovery procedure, provided in the Rules of Civil Procedure, rules 26–37, 28 U.S. C.A., in extremely liberal terms.

■ The real subject-matter of this controversy is not confined to the competition between theatres of the parties in Grand Rapids. Although the last complaint on file does not state in specific detail the various acts which constitute the alleged conspiracy to maintain a monopoly, affidavits subsequently filed furnish some of the details including utilization by defendant of circuit-wide purchasing power to stifle competition by independent theatres not owned by defendants. Inspection of documents furnished by defendant to plaintiff under the prior order of this court disclosed data in defendants' files suggesting an inter-relationship between defendants' theatres in Grand Rapids and those located elsewhere in the State of Michigan, according to the affidavit of plaintiff's attorney. Plaintiff contends that records of these other theatres will serve to reveal policies employed by all defendants in operation of all their theatres in a manner condemned by anti-

trust legislation and by courts in their interpretation of these statutes. In the opinion of this court sufficient good cause has been shown for production of documents which are relevant or may lead to the discovery of data relevant to the subject-matter of this suit.

■ The demand covers every piece of writing in defendants' possession, involving the operation of over a hundred theatres throughout the State of Michigan for a period of twenty-five years. It is no reason for denial of the motion that the order for production of documents would be onerous on the opposing party. This rule is too elementary to warrant citation of authorities. This court believes, however, that it should exercise rigid control over discovery proceedings in cases involving extensive use of such proceedings to the end that the party demanding production is given every opportunity to prepare for trial while protection is afforded the opposing party against capricious demands and harassment. In such cases a piece-meal allowance of the requests for discovery may involve a number of hearings and more argument but should nevertheless eventually prove less cumbersome and more productive of satisfactory results.

■ Consistent with this view the court will allow only such of plaintiff's requests for production at this time as appear to be clearly relevant, reserving a ruling on the remaining requests until plaintiff has had an opportunity to inspect the documents which have been ordered herein to be produced. It may well be that after such inspection the need for additional documents may be obviated or at least the period for which documents were previously requested may be considerably shortened. Plaintiff may thereafter, if necessary, again notice this motion for further hearing.

Defendants are therefore required to produce the following documents included in plaintiff's motion:

1. A certain contract or agreement between one or more of the Butterfield Corporations and R. K. O. Midwest Corporation dated the 24th day of August, 1933,

and signed by W. S. Butterfield Corporation by Gordon and Beatty, and by the President of the R.K.O. Midwest Corporation. Said contract is to be produced together with any and all writing explaining, clarifying, or altering the terms thereof.

2. Corporate minutes, stock transfer books, minutes of corporate directors and executive meetings, and a list of persons to whom dividends have been paid.

3. Clearance schedules by or in behalf of any and all of Butterfield defendants and each and every theatre in which said defendants have any interest and by and between them and each and every film producer, distributor, licensor, or the agents thereof relating or referring to motion picture film. Said clearance schedules to be produced together with any written communication of any kind showing the basis for arriving at the clearance schedule or schedules, the results expected, probable and obtained.

4. Written material possessed by the Butterfield defendants and made by their directors, officers, and employees with reference to clearance schedules, contracts, and leases in the general theatre business relating or referring in any way to the said Butterfield defendants, any other defendant herein, or any theatre in which said defendants have any interest.

5. The formation agreements and preliminary arrangements surrounding and showing all the transactions leading up to the incorporation, forming of partnerships, or otherwise binding the theatres as shown in Schedule A attached to plaintiff's fifth motion for production of documents, together as one or several units now subsidiaries or affiliates of the Butterfield defendants, and as construed or executed down to the date hereof.

6. Written material possessed by the Butterfield defendants relating to licensing or booking of films including price rebates or allowances on film contracts, and/or privileges of any kind enjoyed through the terms of rental of film.

7. All insurance policies with amendments in which Butterfield defendants are shown to have or do have any interest whether said policy or writing is kept by the Butterfield defendants or their affiliates or subsidiaries or by the individual theatres.

8. All records on concession leases or privileges connected thereto showing ownership or management.

9. All books and records pertaining to and recording the booking of films.

10. All leases and lease agreements, purchase agreements or options to purchase or copies thereof covering the occupancy of any and all theatres in the State of Michigan, including the theatres listed in paragraph (I) of plaintiff's fifth motion for production of documents, and by reference to Schedule A attached to such motion, and any other theatre in the State of Michigan in which the Butterfield defendants have any interest.

11. All of the above books, records, and documents are to be produced from January 1, 1925 to the date hereof.

To the extent that production has been ordered, discussion of defendants' remaining objections is deemed unnecessary at this time.