[Civ. No. 19763. Second Dist., Div. One. May 24, 1954.]

JOHN FOWLER, Appellant, v. SHELBY C. BROWN et al., Respondents.

Desmond & Desmond for Appellant.

Demler & Eckert, Edison J. Demler and Charles E. Samuel for Respondents.

DRAPEAU, J.—Plaintiff and the defendant Gladys M. Brown were owners of real property in Long Beach. On May 3, 1949, they entered into an escrow agreement by the terms of which it was agreed that defendant Brown would exchange her 10-unit apartment building having a value of $59,500, subject to an encumbrance of $32,500, for two parcels of property of plaintiff: (1) a duplex worth $10,000; and (2) a single family dwelling valued at $10,000 subject to an encumbrance of $2,000; plaintiff to execute a promissory note for $9,000 to equalize the values of the properties.

Defendant Burcaw, a licensed real estate broker, represented both parties to the transaction.

Plaintiff's Parcel 1 was subject to rent control; Parcel 2 was not. Defendants Burcaw and Mrs. Brown told plaintiff that the apartment building was free from rent control and that it produced a net income of $220 per month.

The complaint alleges that these representations were false, were known to defendants to be false and were made with the intent that plaintiff should rely upon them; that he did so rely and entered into the instant transaction with no knowledge of their falsity, all to his damage. An amended complaint was filed which alleges as a second cause of action that such representations were made "under a misapprehen-

sion of the rent control laws by plaintiff and the said defendants.''

In the meanwhile, the exchange of properties was completed, plaintiff paid certain fees and expenses, and early in December of 1949 he discovered that with the exception of one apartment (owner occupied) the apartment building was subject to rent control, and had a maximum total net income of $103.50 per month.

Subsequently, plaintiff was compelled to refund to tenants certain amounts as overcharges made during the period from the close of escrow on July 22, to December 6, 1949.

On January 9, 1950, plaintiff gave notice of rescission, tendering to defendants the return of the apartment building and demanding return of his two parcels of land and the cancellation of the $9,000 promissory note.

As above noted, the instant action in rescission, or in the alternative for damages, is grounded on fraud and mistake of law.

From an adverse judgment, plaintiff prosecutes this appeal. It is here contended that there is no substantial evidence in the record to support the trial court's findings:

(1) That there was no fraud on the part of respondent, and

(2) That there was no mistake of law in the transaction between the parties.

The record herein discloses that when Mrs. Brown listed her apartment building with him in January of 1949, respondent Burcaw checked with the O.P.A. and was told that the place was not registered. He therefore assumed it was not controlled, and the escrow for the exchange was opened with that understanding. Apartment 5 was owner-occupied prior to the exchange and was free of control.

On May 11 of that year, Mrs. Brown at the request of the rental authorities conferred with Mr. Elmore Wilcox of O.P.A. He told her that the property should have been registered and gave her forms to fill out. Upon learning that Apartment 6 had been rented in January of 1947, he told Mrs. Brown that it was subject to rent control. Mr. Wilcox testified that Mrs. Brown then told him that all accommodations, except Apartment 6, were rented after February 1, 1947. She executed and filed registration statements that all the other apartments were rented for the first time on February 9, 1947.

However, Mrs. Brown testified that she did not rent all of

these eight apartments: 1, 2, 3, 4, 7, 8, 9, 10, on the same day; that "Maybe one would be one day before or after. Some people took the apartment and didn't move in for a month." Mrs. Brown further testified that she did not believe the building was completed before February 1st because "We had the statements from the workmen that they worked in there after February the first. There were affidavits signed by the workmen and we didn't feel that it was (completed)."

At this point, O.P.A. terminated its inquiry for the time being.

It was stipulated between the parties hereto that "the rent laws and regulations then in effect provided that construction which was completed after February 1, 1947 was not subject to rent control."

After the May 11 conference, Mrs. Brown told Mr. Burcaw that Apartment 6 had been frozen by O.P.A. Mr. Burcaw called plaintiff's friend, Mr. Gibbon, a real estate agent who was associated in the exchange, and told him "he had better come over as I thought the deal was gone." He then met plaintiff and Mr. Gibbon and discussed the threat of control over the other apartments. Next Mr. Burcaw went to the Long Beach office of O.P.A. where he was told by Assistant Director Jolly that the whole matter hinged on the date of completion of the building. The notice of completion had been filed before February 1, 1947. Burcaw discussed this with Jolly. Neither was able to determine what constituted completion under O.P.A. regulations. As a result, Mr. Burcaw went to San Francisco on May 13 to see if he could find out. At that time, he did not know when the utilities were turned on or when the apartments other than 5 and 6 were first occupied. However, he informed the O.P.A. that affidavits could be obtained from contractors to the effect that certain work in the building had not been completed on February 1, 1947.

With this information at hand, the legal department of the O.P.A. in San Francisco gave Mr. Burcaw its oral opinion that the building was not controlled. He telephoned this information to Mrs. Brown, who in turn relayed it to plaintiff.

The escrow which was opened on May 3rd was not closed until July 22, 1949. Meanwhile, in June, 1949, Mrs. Brown was again called by Mr. Wilcox to his office for further discussion. Prior to this, she had submitted the affidavits of the contractors heretofore referred to. Because of conflicting

statements received by his office as to the date of completion of the building, Mr. Wilcox had continued his investigation. As a result it was determined by O.P.A. that the building had been completed before February 1, 1947, and was therefore subject to rent control. At this conference in June, Mr. Wilcox so informed Mrs. Brown. He also recommended the institution of suit against her to recover treble damages for overcharges of rentals to tenants. At a much later date this suit was settled by consent judgment for the actual amount of rent overpaid.

In reply to the question of plaintiff's counsel, whether she had told Mr. Fowler, or Mr. Burcaw had told Mr. Fowler during pendency of the escrow regarding determination of O.P.A. that all of the apartments were controlled except Apartment 5, Mrs. Brown stated:

"No, I never told Mr. Fowler. I was with Mr. Burcaw in his place of business and we discussed it. Mr. Burcaw discussed the O.P.A. trial, or the trouble, with Mr. Fowler, and Mr. Fowler said, 'Well, you go right down and fight them, I am right behind you.' He said, 'I beat them once.' . . . Mr. Desmond: Do you remember if this was before the escrow closed, or after? A. Long before."

Mr. Burcaw went to San Francisco on May 13, 1949. Both Mrs. Brown and Mr. Fowler knew about this trip and what it was for. With respect to this, Mr. Fowler testified: "Yes. I knew at the time Mr. Burcaw went to San Francisco that the O.P.A. was claiming there was control on this whole building. I am speaking of 1929 Magnolia Avenue, the property of Mrs. Brown. That is what the O.P.A. wanted to make out and then the affidavits were to overcome that. . . . The O.P.A. wanted to claim they were all frozen and the affidavits were to overcome that. Q. You knew of all that? A. I knew that. Q. You further knew, that being the case, the O.P.A. claimed that the place was under control and that Mr. Burcaw went to San Francisco to try to overcome that claim, you knew that, didn't you? A. Yes. Q. Did you ever go down to the O.P.A., Mr. Fowler, and ask them what the facts were on the case? A. No, I never went to the O.P.A. because Mr. Burcaw said, 'Now, we have put the affidavits in and everything is in the clear.' . . . As I recall it, it was a question of whether or not the one apartment being frozen would automatically freeze all of them, that was the point that I know was discussed with Mr. Burcaw and myself. . . . Q. And in taking the trip to San

Francisco, he was to see if the affidavits would keep the rest of them from being controlled? A. Yes. . . . Q. Did you make any effort to find out what the O.P.A. claimed? A. No, I took Mr. Burcaw's word for it."

On July 7, 1949, the parties discussed the possibility of the O.P.A. coming in at some future time and imposing rent control, or decreasing the rent by some form of governmental action. On that day the following instrument was executed and made a part of the escrow agreement:

"It is understood between the parties hereto that one of the apartments at 1929 Magnolia Avenue, Long Beach, California, is O.P.A. controlled and that all other apartments are at this time decontrolled. It is agreed that should at any time the O.P.A. step in and lower the rentals, thereby decreasing the present income of the property, the seller, Gladys May Brown, shall be relieved of any and all responsibility therewith. However, should these decreased rents be retroactive, the seller of said property herein agrees to make all rebates up to the close of escrow."

On July 22, the day the escrow was closed, another escrow supplement provided that Mrs. Brown should pay Mr. Fowler $15 per month until July 30, 1950, or the end of rent control, to make up for the loss of rent on Apartment 6, which was then controlled.

On December 5, 1949, Mr. Fowler discovered that the entire property was controlled, and on December 7th he made a refund of all charges over the rent ceilings during his period of ownership, to wit: the sum of $384.50.

It was stipulated at the trial that, "As a result of a rent ceiling being established on the premises up to the end of rent control, Mr. Fowler sustained a loss of $212"; this being the difference between what he was charging and what he was thereafter permitted to charge.

Appellant's position is that respondent Brown was under obligation to avoid an act of fraudulent concealment by a full disclosure to him of the factual developments of her conferences with Mr. Wilcox of the O.P.A. In support of this, appellant cites *Dyke* v. *Zaiser*, 80 Cal.App.2d 639, 653 [182 P.2d 344], where it is said:

"Many cases have been cited where it has been held that a man is not necessarily required to state everything he knows about the property involved. The present tendency, however, is to class concealment as actual fraud in those cases where the seller knows of facts which materially affect the

desirability of the property which he knows are unknown to the buyer.''

Based upon the evidence, of which the above is a brief résumé, the trial court made the following findings which appellant urges are unsupported by the evidence:

''It is not true that defendants falsely or fraudulently represented to plaintiff that Parcel 3 was free from control under the Federal Housing or Rent Acts; that instead it is true (1) that at all times during the negotiations between the parties defendants earnestly were of the belief that said parcel was free from such control (2) that such belief . . . was reasonably founded, and (3) that when the dispute arose between the defendants and the officials of the Office of Price Administration defendants fully disclosed to plaintiff the nature and all aspects of such dispute and plaintiff was thereby as fully apprised of such dispute and of the reasons for the view of said officials as were the defendants. . . .

''It is true that plaintiff and defendants understood the provisions of said rent control laws applicable to said parcel and were aware of the provision that said laws applied to apartment houses completed prior to February 1, 1947, but they were mistaken as to some of the incidents which the officials of the O.P.A. might take into account when determining whether an apartment house was or was not completed prior to February 1, 1947. It is true (1) that at the time said properties were exchanged and the escrow closed the officials of the O.P.A. had not ruled that said apartment house was subject to control and defendants were then earnestly and reasonably of the belief that said apartment house was free from control; (2) that after the said exchange of properties and the close of said escrow the officials of O.P.A. obtained additional information and thereupon ruled that said apartment house was subject to control; and (3) that defendants in all their discussions with the officials of O.P.A. fully and truthfully answered all queries of said officials and in addition thereto fully and truthfully disclosed to said officials such further and additional information as defendants earnestly and reasonably believed might be pertinent to the consideration as to whether said apartment was or was not subject to control.''

As recently stated by this court in *Morand* v. *Seaside Memorial Hospital*, 121 Cal.App.2d 745, 746 [264 P.2d 96]:

''The trial court's findings are conclusive on appeal if there is substantial evidence to support them. An ap-

pellate court will view the evidence in the light most favorable to the respondent; will not weigh the evidence, and will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact."

While it is true that respondent Brown, when interrogated during the trial was unable to remember many details of the exchange transaction, that in and of itself is insufficient to charge her with bad faith.

"Misstatement or suppression of facts is not fraudulent unless motivated by an intent to deceive or to induce another to enter into a contract (Civ. Code, § 1572), or unless it amounts to a breach of duty (§ 1573). The question of actual fraud is always one of fact. (Civ. Code, § 1574.)" *Mesmer* v. *White*, 121 C.A.2d 665, 671 [264 P.2d 60].

It is clearly shown by the record that a bona fide dispute existed between respondent and the O.P.A., and that appellant was well aware of it. The trial court found that both parties "understood the provisions of said rent control laws." The dispute involved a factual issue, i.e., whether the law applied to a certain set of facts.

This court is of the opinion that the evidence amply supports the findings complained of.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.