**Manuel SERPA, et al., Plaintiffs,**

**v.**

**JOLLY KING RESTAURANTS, INC., a California corporation, et al., Defendants.**

**Civ. No. 72-423-N.**

United States District Court,
S. D. California.

April 8, 1974.

**628**

Peter Shenas, Gary S. Elster, Shenas, Robbins, Shenas & Price, David H. R. Pain, Robert L. Pippin, Pain, Moody & Pippin, San Diego, Cal., for plaintiffs.

James O. Sullivan, Christopher Q. Britton, Sullivan, Jones & Archer, San Diego, Cal., for defendant Gagosian.

Robert G. Steiner, Jerry W. Monroe, James K. Eckmann, Robert B. Coffin, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for all other defendants.

## MEMORANDUM ORDER ON MOTIONS

NIELSEN, District Judge.

On December 1, 1972, defendants moved for dismissal of Counts one through six, or in the alternative, for a more definite statement as to Counts two through six. Defendants also moved to dismiss certain defendants. A hearing was held on February 5, 1973, and the motions were taken under submission.

On February 28, 1973, the Court issued a Memorandum Order ruling on these motions. That Order is hereby vacated and this Order is substituted in its place.

For the following reasons, the motion to dismiss all or any of the counts or certain defendants is denied, on the condition that plaintiffs amend the complaint. The alternative motion for a more definite statement is granted as to Count five, denied as to all other counts.

COUNT ONE: DEFENDANTS' MOTION TO DISMISS (1) FOR FAILURE TO STATE A CLAIM UNDER THE ANTITRUST LAWS AND (2) FOR LACK OF CAPACITY BY PLAINTIFFS AS PARTNERS TO SUE ON THE ANTITRUST CLAIMS.

*Failure to state cause of action*

The plaintiffs are joint venturers with defendant Jolly King Restaurants, Inc. These joint venturers own and operate separate Jolly King Restaurants primarily, in various California cities, but also in cities outside of California.

Plaintiffs claim that the joint venture agreement that they each signed with the defendant Jolly King Restaurants, Inc. (hereafter Jolly King) violates the antitrust acts in that it constitutes an

unlawful tying agreement. Under the joint venture agreement it is alleged, first, that the restaurants were required to contract with Jolly King (the 51% partner in the joint ventures) for management, accounting, promotion and advertising; second, that all requirements for foodstuffs and supplies were to be bought from certain sources designated by Jolly King at prices below market price but that, in fact, the true prices were in excess of market price; and third, that complete management and control were to be vested in Jolly King.

Plaintiffs allege on page nine of the complaint that the joint venture agreements were a device for defendants to use their superior economic power and leverage. This Court shall now review the particular grounds on which defendants seek dismissal.

I

Defendants first contend that joint venture agreements have been held to be lawful. Plaintiffs respond that they are attacking the legality of the tying arrangement which these agreements provide for, and as stated in Times-Picayune v. United States, 345 U.S. 594, 622, 73 S.Ct. 872, 888, 97 L.Ed. 1277 (1953), " . . . even otherwise reasonable trade arrangements must fall if conceived to achieve forbidden ends . . . ." The legality of a joint venture *per se* is not at issue.

II

Defendants next contend that it is not unlawful for the managing partner to designate sources from which a partnership shall acquire goods. At issue, however, is not the control but the provisions in the agreements.

Sherman Act § 1 strikes at "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade . . . ." Clayton Act § 3 strikes at conditions and understandings that there are to be rebates, sales, or discounts on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in goods of a competitor of a seller where the effect of the understanding may be to substantially lessen competition or create monopoly. (The Clayton Act is much more restrictive than the Sherman Act and covers only goods, not services or land.)

Because of their status as a 51% partner, defendant Jolly King would have the power to select the sources for the joint venture's supplies and goods, unless otherwise agreed. But it cannot provide by contract with the other joint venturer for an arrangement which constitutes an unlawful tying agreement, even though the effect may be the same. The antitrust laws invalidate contracts which substantially lessen competition, not decisions by a controlling partner which may do the same. Further, plaintiffs have not claimed that the joint venture is a combination in violation of the antitrust laws but only contest the legality of certain contract provisions.

III

There is a related ground for dismissal—though it cannot be stated as a separate one—based on the assertion in the complaint that the joint venture unlawfully provided that the defendants were to have all the management and control. In effect, plaintiffs are charging that management and control is one of the tied products. This provision is merely a reaffirmation of the partnership arrangement (unlike the provisions providing for the designation of certain sources of goods and services) not necessarily in violation of the antitrust acts.

It is true that services may be tied "products," and the allegations that the joint ventures were required to contract with Jolly King for accounting, promotion and advertising may have merit in finding a tying arrangement. But this Court finds it very difficult to construe management and control, unless given to

a third party, as an unlawful tied service.

Stilwell v. Trutanich, 178 Cal.App. 614, 3 Cal.Rptr. 285 (1960), held, *inter alia*, that there may be joint ventures where parties have unequal control of operations because of special agreement but that such unequal control and authority will not be implied from the relationship alone. California law therefore requires that management and control be spelled out, probably irrespective of the percentages of ownership otherwise stated in the contract. The joint venture agreements involved in this case therefore contained a specification of control required by California law.

In fact, plaintiffs seem to recognize that management and control are not sufficient to be considered tied products, since on page 5 of plaintiffs' memo in opposition to the motions, plaintiffs list the tied products at lines 25 and 26 and omit management and control. Accordingly, although a motion to dismiss on this ground alone is procedurally impossible, a motion by defendants to strike this part of the complaint referring solely to management and control as a tied product (and not including advertising, promotional activities and other services) would be in order.

### IV

In Siegel v. Chicken Delight, Inc., 448 F.2d 43 (9th Cir. 1971), the court held that standard form franchise agreements which required that the franchisees purchase certain essential cooking equipment, dry-mix food items, and trademark bearing packaging from the defendant franchisor as a condition of obtaining defendant's trademark license were a violation of the Sherman Act as a tying arrangement. In *Siegel*, at 47,

the court listed four elements required to establish the existence of an unlawful tying arrangement. From all indications defendants are contesting only the first required element: the existence of a tying product.

On page 7 of their memorandum, defendants state, "The only sale alleged in plaintiffs' complaint is the 'sale' to plaintiffs by Jolly King of the joint venture interests."

■ Plaintiffs allege on page 8 of the complaint, however, that

" . . . Plaintiffs were required to enter into Jolly King's Restaurant Inc.'s standard form Joint Venture Agreement as a prerequisite to the joint venturer's use of the unique and distinctive trade name, "Jolly King Restaurant," and their unique and distinctive trademark and logo."

In other words, the exclusive rights of the trademark was the tying product. In *Siegel* the Court of Appeals regarded the trademark or franchise license as a distinct tying item.[1] Accordingly, this Court has no difficulty in ruling that there is a tying product.

As previously noted, the other requirements set down in *Siegel* are not at issue. It is true that the allegations in the complaint meeting these requirements are almost as broad as the requirements. For example, page 7, line 26 of the complaint alleges that the arrangements involve a substantial amount of commerce. However, the questions of (1) the sufficiency of economic power (appreciably to restrain competition in the tied product) and (2) the substantiality of interstate commerce are better left to discovery and perhaps to trial.

■ I therefore find that the alleged failure to state a cause of action is without merit.

---

1. The essential characteristic of a trademark or license is its uniqueness, and that uniqueness alone may confer the economic power and leverage sufficient to show an antitrust violation. "Uniqueness confers economic power only when other competitors are in some way prevented from offering the distinctive product themselves." Fortner Enterprises, Inc. v. United States Steel Corp., 394 U.S. 495, 504, 89 S.Ct. 1252, 1259, 22 L.Ed.2d 495 (1969).

*Lack of capacity to sue on the antitrust claim*

This is probably the most difficult issue now raised by the defendants.

■ Defendants are correct in stating that the law of the state usually governs the capacity of the plaintiffs to sue in federal court on civil actions. Rule 17 of the F.R.C.P. reads in part:

"In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, . . . ."

The issue of capacity presents conceptual difficulties, but it can best be resolved by asking the following questions: (1) Can the plaintiff partners sue the defendant partner, Jolly King? (2) Related, is the right of action under the antitrust laws vested in the plaintiff partners or in the partnership? (Which has really incurred the damages?) (3) If the right of action is vested in the partnership, can the partnership sue non-partners in California without the approval and consent of all the partners? (4) Even if they could not sue in California court, is there some special reason why they have capacity to sue in the name of the partnership in federal court?

I

Both parties rely on the case of Prince v. Harting, 177 Cal.App.2d 720, 2 Cal.Rptr. 545 (1960), which restated the general rule about partners suing one another.

"It has been the general rule in this state for many years that: 'partners cannot sue one another at law for any breach of the duties or obligations arising from that relation. This can only be done in chancery by asking a dissolution and accounting, and if damages accrue from any cause in such proceeding, they must be adjusted by some appropriate method in that tribunal (Stone v. Fouse, 3 Cal. 292) . . . .' " 177 Cal.App.2d at 732, 2 Cal.Rptr. at 552.

Basically, legal remedies will not be available for piecemeal claims between the partners. It appears that, since the plaintiffs have asked for a dissolution and an accounting under Count six, that the general rule in California is no longer available as a defense. Putting aside for now, however, the question of dissolution, are there special circumstances other than dissolution where partners may sue each other.

The court in Prince v. Harting went on to say, at 736, 2 Cal.Rptr. at 554:

"The courts have recognized the difference between an award in favor of a *partner* and one in favor of a partnership . . . . It has been held that, where a partner converts the partnership assets, the injured copartner may bring an action at law instead of an action for an accounting, although he could bring the latter type of action. [Citation omitted.] These cases recognize a distinction between ordinary breaches of the partnership agreement and frauds and other torts of various kinds which are not really 'partnership' transactions."

The issue therefore becomes: does the subject-matter of the action primarily involve a breach of the partnership agreement. There is little doubt in the Court's mind that a violation of the antitrust laws give rise to tort liability. The plaintiffs are not alleging solely a breach of the partnership agreement in Count one but are alleging damages incurred by the tortious conduct.

■ Accordingly, under California law plaintiffs have capacity to sue the remaining partners on their own behalf. However, the right to damages may vest

only in the partnership and not the plaintiff-partners—something this Court shall now examine. (If this be the case, then capacity to sue on behalf of the partnerships, rather than capacity to sue only on behalf of the partners, will have to exist.)

## II

15 U.S.C. § 15 provides:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . ."

Both parties cite Coast v. Hunt Oil Co., 195 F.2d 870 (5th Cir. 1952) in which the court resolved the issue of whether an antitrust cause of action vested in the partner or the partnership.

"Assuming for the purpose of this decision that the complaint alleged a violation of the antitrust laws and consequent damage, that damage consists of loss of profits in the partnership business and we think the cause of action is vested in the partnership, a distinct legal entity under Louisiana law."

In *Coast* the plaintiff owned 49% of the stock, as in the present case, but the court found that the injuries sought to be recovered were not for injuries to the refinery itself (property owned by the partnership) but were for loss of profits which allegedly would have been made by the business except for the antitrust violation. The court stated that the damages to the physical property were so remote that the partner was not injured in his business or property and that therefore a partner had standing to sue only on behalf of the partnership and not for himself.

A review of the complaint shows that on pages 9 and 10 the plaintiffs are asking for damages (1) due to increased overhead and expenses, (2) for loss of profit and goodwill, since the joint ventures have allegedly been put at a competitive disadvantage, (3) for loss of freedom of choice and competitive prices

in the purchases of food prices, and (4) for the loss of reputation. The damages alleged are for losses to the partnership and not to the partnership property *per se*.

■ Accordingly, plaintiffs have *standing* to sue only on behalf of the partnership (and not for themselves). However, whether the plaintiffs have *capacity* to sue on behalf of the partnership, since the alleged losses were to it, is the next question this Court shall examine.

## III

I confront the problem that one partner (or several) cannot sue for his (or their) aliquot share of a partnership claim or even sue individually on behalf of the partnership under California law.

"Unlike some other states such as New York . . ., California apparently still follows the common law rule that a partnership cannot sue in its common or firm name, that to enforce a partnership claim all those associated as partners must join individually as plaintiffs." Leh v. General Petroleum Corp., 165 F.Supp. 933, 936 (S.D.Cal.1958), aff'd on other grounds, 330 F.2d 288 (9th Cir. 1964).

Rule 17(b) obviates the particular problem of in whose name the suit may be brought, since the Rule provides that a partnership which has no capacity to sue in its own name under the law of the state may sue in its own name in federal court when a federal question is involved. Plaintiffs here may sue in the name of the partnership, since the benefit is to the partnership, provided that the partnership claim could otherwise be prosecuted.

The problem is not really one of procedure (to which Rule 17(b) is addressed) but one of substantive law: capacity to bring suit and to recover—as opposed just to suing in the partnership's name—on behalf of the partnership.

The court in *Leh* recognized that California law provides that one partner may not maintain a suit for the benefit of the partnership without the consent and approval of all the partners. Even if Rule 17 allows the plaintiffs to sue in the partnership name, something not permitted in California (though the parties have not made this clear), to enforce a partnership claim still requires resort to California law, since as noted, the exception incorporated in 17(b) deals only with the procedure of prosecuting a partnership claim.

The court correctly noted that the particular problem of one partner bringing an antitrust suit could never arise in California courts in the same context because 17(b) permitted such a suit in partnership name, while in California all partners would have to be joined in the first instance. Therefore the question for the federal court was not an initial one of party joinder but a different one of when a partnership claim could be prosecuted *once* the procedural problem was overcome.

In *Leh* one partner brought an antitrust action in federal court for a claimed injury caused by an antitrust violation. The suit was brought against a non-partner without the approval of the remaining partner. Although California law would not have permitted the suit to proceed because all partners had not given their consent and approval by associating in the lawsuit, the court in *Leh* relied on several grounds in permitting the suit to continue in federal court.

*Leh* involved a partnership which was dissolved by written agreement of the partners prior to the commencement of the lawsuit and which was in the process of winding up during the suit. The court relied upon § 15035 of the California Corporations Code, which provides that one partner may bind the other in an act appropriate for winding up partnership affairs. Since the real problem of allowing one partner to bring a suit on behalf of the partnership involved binding the partnership whether it wins or loses, the court was able to hold that making the partnership thus bound (during the prosecution of an antitrust claim) was an act appropriate for winding up the partnership. Consent and approval of all the partners was not required.

To invoke the above section of the California Code, to fashion an exception for federal cases, the court in *Leh* stated:

"So necessity and policy combine to dictate that the question of whether this federal court action on a federally-created partnership claim can be maintained be decided on the basis of 'federal law * * * [fashioned] from the policy of our national [antitrust] laws.' Textile Workers Union v. Lincoln Mills, 1957, 353 U.S. 448, 456, [Other Supreme Court citations omitted.] This follows not only because the law of the State in which the partnership was created and transacted business can be of no aid, but also because the problem here concerns the enforcement in a federal court of a right created by the Congress; and federal law, not state law, must control in determining the rules governing enforcement in federal courts of rights and remedies created by federal statute." 165 F.Supp. at 936.

"However it can be postulated with some certainty that it is not the policy of our national antitrust laws to discourage private treble damage actions such as this. To the contrary, 'Congress itself has placed the private antitrust litigant in a most favorable position through the enactment of § 5 of the Clayton Act. * * * In the face of such a policy this Court should not add requirements to burden the private litigant beyond what is specially set forth by Congress in those laws.' [Citations omitted.]" 165 F. Supp. at 937.

The court in *Leh*, 165 F.Supp. at 938, stated that the desirability of permitting

one of the two partners of a dissolved partnership to maintain a suit on behalf of that partnership was further enhanced by the circumstance at bar that the partner who refused to join in authorizing the suit probably felt that he did not have the economic freedom to do so, since his business required him to keep on good terms with those named as a defendant.

The instant case is analogous to *Leh*. In the way of relief under Count six plaintiffs are asking, *inter alia,* for a dissolution and an accounting of all dealings and transactions, a winding up of the joint ventures. It is true that the dissolution was already accomplished in *Leh* and that the affairs were in the process of winding up. Here the plaintiffs are asking for a dissolution concurrent with prosecution of the antitrust claims. However, this distinguishing factor, that the dissolution occur concurrent with the prosecution of the claim, is really irrelevant—assuming that the Court grants relief both on the dissolution and on the antitrust claim. (And since the Court will shortly determine that it has pendent jurisdiction over Count six and since it chooses to exercise its discretion in retaining the dissolution and accounting, the Court will have the power to grant a dissolution.)

Binding the partnership in an antitrust suit against non-partners is an act appropriate for both dissolving the partnership and winding up the partnership affairs. Under these circumstances consent and approval of all the partners is not required in a cause of action arising under federal law wherein plaintiffs seek enforcement of a federal right.

Even if *Leh* is inapplicable to the present situation, there is another ground (relied upon more heavily by the plaintiffs) on which this Court finds ca-

pacity: the involvement of the partners in this misconduct which is the foundation of the antitrust claim. Both parties cite Coast v. Hunt Oil, *supra,* 5th Cir., where the court held that the 49% partner could not bring suit on the partnership's behalf. But the court did state:

"There is no allegation in the complaint that [the 51% partner who refused to join in the action] was guilty of any fraud or misconduct or, except by inference, that he was unwise in refusing to consent to bringing of this action by the partnership. There are no grounds for the Court to interfere with the management of the entity, and to authorize this suit to be maintained in its behalf either by a receiver, or by one of the partners." 195 F.2d 870, 872.

Klebanow v. N. Y. Produce Exchange, 344 F.2d 295 (2d Cir. 1965), also cited by both parties, held *inter alia,*

"If New York returns only a murky answer to the question of capacity posed by F.R.Civ.P. 17(b), *federal judges are entitled to resolve the doubt in a way that permits the assertion of a federal claim."* (Emphasis added.)

In *Klebanow* the limited partners of a brokerage firm brought an antitrust action. The general partners had prior to this agreed with the N. Y. Produce Exchange to divest themselves of any power to do any act on behalf of the partnership. An employee of the exchange was appointed trustee. This fact alone, that the trustee was affiliated with the wrongdoers because the wrongdoers were members of the trustee's employer, was sufficient to enable the limited (and minority) partners to sue on the partnership's behalf.[2]

---

2. "Indeed it makes considerably greater sense to clothe the instant appellants with whatever descriptive phrase is necessary to enable them to sue on behalf of the partnership than to entertain derivative suits by persons owning a few shares in [a] giant [corporation], . . . ." Klebanow v. N. Y. Produce Exchange, *supra,* 344 F.2d 297.

If the minority partners were allowed to sue both because the general partners were unable to do so and because the trustee who had the power was sufficiently connected with the wrongdoers (though not the actual wrongdoing), then, *a fortiori,* the partners in the present case should be allowed to sue both the majority partner as one of the wrongdoers and the non-partner wrongdoers.

■ In view of what has just been said, plaintiffs are clothed with capacity to sue both the majority partner and others, but since the alleged damages belong to the partnership, the plaintiffs must sue in the names of the partnership joint ventures as well as on their behalf. Accordingly, since the parties appear confused as to whether plaintiffs can sue in the partnership name under California law, and since this is therefore uncertain, plaintiffs may resort to Federal Rule 17(b) to sue in the partnership name. The Court hereby grants plaintiffs leave to amend their complaint to include the names of the various partnership joint ventures. If plaintiffs refuse to amend their complaint thusly, then the Court will grant defendants' motion to dismiss Count one. The motion is denied at this time, subject to the condition just stated.

COUNTS TWO, THREE, FOUR AND FIVE: DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO ALLEGE WITH SPECIFICITY FRAUD UNDER § 10b–5 AND COMMON LAW FRAUD; OR IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT.

■ The motion to dismiss is denied outright as to these four counts, since the objections which the defendants have raised, if meritorious, can readily be overcome by granting defendants' motion for a more definite statement.

*Counts two and three: 10b-5 claims*

In Walling v. Beverly Enterprises, 476 F.2d 393 (9th Cir. 1973), without dis-cussion as to reasons why, the court applied Rule 9(b) of the Federal Rules of Civil Procedure to a 10b-5 action.

Accordingly, Rule 9(b) applies to the 10b-5 claims here. Rule 9(b) reads:

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

In *Walling* the court discussed what Rule 9(b) required. The court stated that Rule 9(b) did not require the pleading of detailed evidentiary matter. The court further stated:

"Nor does Rule 9(b) require any particularity in connection with an averment of intent, knowledge or condition of the mind. It only requires the identification of circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." 476 F.2d at 397.

■ Mere conclusory allegations that defendant's conduct was fraudulent in violation of Rule 10b-5 are insufficient. 476 F.2d at 397. In *Walling* plaintiffs alleged that defendant entered into an agreement with the limited intention of performing it. The court held that this was a sufficient averment. While it is true that the plaintiffs in *Walling* had also alleged the time and place of the alleged fraudulent acts, this Court finds that allegations of time and place are unnecessary in the present complaint in view of the number of plaintiffs and its conclusion that defendants can prepare an adequate answer from the allegations in the complaint.

Accordingly, Rule 9(b), though applicable, does not compel the plaintiffs to make a more definite statement.

Defendants also rely on Rule 12(e) which provides that if a pleading is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement.

Defendants argue that further information is needed to determine if this action is the proper vehicle for a class action. Although defendants cite authority (a New York district court decision), the present stage of the proceedings is an improper one to demand more information from plaintiffs to determine the propriety of a class action. Neither Rule 9(b) nor 12(e) were enacted for this purpose.

Defendants are attempting to obtain the facts surrounding the signing of the joint venture agreements: what transpired, with whom, when, where and so forth. On page 14 of their opposition memorandum plaintiffs respond that their complaint is not based on oral misrepresentations but rather on defendant Jolly King's joint venture agreements which allegedly contain material misrepresentations and omit to disclose material facts about prior operation under previous joint venture agreements.[3] As a result, defendants have allegedly violated all three subsections of Rule 10b-5.

Since the plaintiffs are relying entirely on (1) defendant Jolly King's operations prior to signing the joint ventures and (2) the resulting misrepresentations and omissions contained in the agreement, this Court deems the pleading to be neither so vague nor ambiguous nor unclear that defendants will not be able to file a responsive pleading thereto. See Gann v. Bernzomatic Corp., 262 F. Supp. 301, 304 (S.D.N.Y.1966).

In any event, the information the defendants are seeking in a more definite statement is generally the same under both Counts two and three *and* four and five. Since the Court is granting defendants' motion under Count five (fraudulent concealment), the information sought under the 10b-5 claims will be furnished to defendants anyway. However, as noted, since the plaintiffs are relying entirely on the agreements and not the facts surrounding their signing, this information is generally irrelevant to the 10b-5 claim.

*Counts four and five: false promise and fraudulent concealment*

On page 14 of the complaint, and elsewhere, plaintiffs allege common law fraud by incorporating in these causes of action the allegations of 10b-5 violations made under Counts two and three. Not only are the 10b-5 allegations worded in terms of that rule, but they do not explicitly state all the elements required for common law fraud. Rather than incorporating allegations from Counts two and three, it would have been more commendable and helpful if the plaintiffs had set down separately the facts constituting the elements of common law fraud. Be that as it may, it is still the duty of this Court to determine if common law fraud has been alleged with sufficient particularity as required by Rule 9(b).

## I

### (False Promise)

§ 1572 of the California Civil Code provides that, if the other elements of fraud are present, a promise made without any intention of performing it constitutes actual fraud. Pinney T. Topliff vs. Chrysler Corp., 176 F.Supp. 801 (S. D.Cal.1959), a diversity case applying California law, listed the four necessary elements to prove fraud. There must exist (1) a false promise or representation as to a material fact, (2) knowledge of falsity when made, (or lack of reasonable ground to believe in its truth,) *or* without any intention of performing or fulfilling it, (3) an intent to deceive and to cause reliance at time of the promise, and (4) reliance thereon with resulting injury and damage.

"And under California law there is a presumption of fair dealing which is

---

3. Should they attempt to do so, plaintiffs will be estopped from relying on anything outside of the agreement and prior operations, such as an alleged oral misrepresentation, etc., in order to recover under Rule 10b-5. (The same will hold true for Count four as well.)

tantamount to the presumption of innocence in criminal cases. . . . Because of the broad scope of these provisions which have been in the California Codes since their enactment in 1872, the courts have laid down the rule that the evidence in proof of fraud must be clear and convincing. This is also the general and federal rule." 176 F.Supp. at 803.

Defendants contend that plaintiff must plead the names of the agents acting on defendants behalf, what they said, when they said it, to whom, and their authority to speak. California law does provide for this and also requires that the agents' names, titles or capacities to be pled. See Radar v. Apple Valley Bldg. & Dev., 261 Cal.App.2d 308, 68 Cal.Rptr. 108 (1968), and Gautier v. General Telephone, 234 Cal.App.2d 302, 44 Cal.Rptr. 404 (1965).

Briefly, plaintiffs allege that they entered into joint venture agreements which were substantially identical in form to those entered into before, which contained the same promises, but that defendant Jolly King had not performed according to the agreements but had operated the restaurants differently. (See p. 12 of the complaint.) They further allege that defendant Jolly King omitted to state to plaintiffs its failure to perform under the prior similar agreements, and in reliance on the agreement (and promises therein) and on the non-disclosures plaintiffs entered into the agreement and suffered damages.

The plaintiffs are alleging that such prior conduct evinced an intention by the defendant not to fulfill the promises with respect to operation of restaurants covered by the agreements with the plaintiffs. (This inference deals with both the false promise and fraudulent concealment.)

Plaintiffs again state that they are relying completely on the agreement and prior conduct to prove fraud and not anything said by anyone about it or in connection with it. The plaintiffs have

merged all other grounds for fraud which they might have into this narrow one, and, in effect, are taking their chances of recovering just on the agreement and prior operation alone. As this Court just concluded in footnote three, the plaintiffs will be required to adhere to the theory on which they now rely to prove common law fraud.

 In light of this understanding and with this in mind, the Court denies the motion for a more definite statement as to Count four.

## II

### (Fraudulent Concealment of Material Facts)

Concealment of facts, besides requiring the existence of the other elements of fraud, involves the suppression of that which is true, by one having knowledge or belief of the fact. California Civil Code § 1572.3. It also involves the suppression of a fact, by one who is bound to disclose it, or who gives information of others which are likely to mislead for want of communication of that fact. California Civil Code § 1710.

On pages 22 and 23 of their reply memorandum, defendants claim that concealment or suppression of facts must be active, that mere non-disclosure is not enough. They cite Am.Jur. to prove that:

" . . . Thus, as a general rule, to constitute fraud by concealment or suppression of the truth there must be something more than mere silence or a mere failure to disclose known facts."

I disagree. Lingsch v. Savage, 213 Cal. App.2d 729, 29 Cal.Rptr. 201 (1963), involved the duty of a vendor of a lot to disclose material information he knows not to be within the reach of and not readily accessible to the vendee. A duty to disclose exists. The court stated, at 734, 29 Cal.Rptr. at 201, that actual fraud involves suppression of that which is one's duty to declare as well as a declaration of that which is false. And

**638**

therefore silence constitutes a fraud whenever there is an affirmative duty to disclose. (Concealment can involve either a breach of a duty *or* an intent to deceive, to induce reliance or both.) Fowler v. Brown, 125 Cal.App.2d 450, 270 P.2d 559 (Cal.App.1954).

Although plaintiffs do not expressly allege that the defendant Jolly King had an affirmative duty to disclose the allegedly omitted material facts, that is certainly inferred by incorporation of the Rule 10b-5 violation claims and is in fact one of the issues to be tried.

■ However, to prove these facts, plaintiffs must first plead them. By its very nature, the tort of concealment requires plaintiff to plead the information surrounding the entering into the agreements and the information beforehand, with more specificity than is required in a 10b-5 claim. This information is required, and the Court therefore grants a motion for a more definite statement on this count.

COUNT SIX: DEFENDANTS' MOTION TO DISMISS STATE CLAIM (BREACH OF FIDUCIARY DUTY) ON ONE (OR ALL) OF THREE GROUNDS; OR IN THE ALTERNATIVE, A MOTION FOR A MORE DEFINITE STATEMENT.

*Motion to dismiss for failure to state a claim, or in the alternative, for a more definite statement*

"The existence of a joint adventure being established, it follows that a fiduciary relationship between the coadventurers arose therefrom, which demanded of them the utmost good faith in all their dealings with each other; and this requirement of good faith alone forbade the accrual of any profit, or the acquisition of any secret advantage by one of the coadventurers over the other." Iron Etc. Co. v. American Milling Etc. Co., 115 Cal. App. 238, 248, 1 P.2d 1008, 1012 (1931).

Closely related, California Corporation Code §§ 15020 and 15021 give rise to similar fiduciary duties owing by one partner to the other partners, and California cases generally provide that a faithless partner is liable for any losses occasioned by a breach of fiduciary duty.

Defendants cite the case of Pinney T. Topliff, *supra*, where the court listed the essential elements of fraud which were required to be pled. The court stated that whether the fraud be actual or constructive, the same elements must always be pled. That statement was certainly broader than was necessary in that case, since the facts there involved actual fraud. Breaches of fiduciary duty usually involve constructive fraud but not necessarily actual fraud and it would be a futile exercise to require that parties allegedly injured by breach of fiduciary duty allege actual fraud.

■ The motion to dismiss for failure to state a claim for relief or alternatively for a more definite statement is denied. (Compared to the lack of detail in the other state law claims, the plaintiffs have detailed on pages 15 to 17 of the complaint the conduct allegedly constituting a breach of fiduciary duty.) *Motion to dismiss due to lack of jurisdiction over the subject matter*

This alleged lack of jurisdiction is predicated on the rule that partners may not sue one another on transactions arising out of operation of the firm, solely out of the partnership relationship, until there has been a dissolution and an accounting. The issue is very similar to the one discussed earlier under Count one concerning capacity.

On page 19 of the complaint, under Count six, plaintiffs ask that the joint ventures be dissolved and that there be an accounting. Accordingly, this Court must address itself to whether it can adjudicate the legal claim for damages while also adjudicating the equitable claim for dissolution and accounting.

The rule prohibiting intro-partnership lawsuits until *after* accounting and dissolution is founded on the theory that equity will not adjudicate claims to the partnership property or partnership assets in a piecemeal fashion and that the claims of creditors should not only be adjudicated together with co-partner's claims but also take priority over other claims. There are exceptions to this rule, nonetheless. One is when the courts find that there has been a material breach at the very threshold of the enterprise (for example, contract conditions have not been met) or where a tort has occurred, such as conversion of partnership assets or a major breach of trust, which "not only terminates the partnership but wrongfully destroys it, . . . . " Barlow v. Collins, 166 Cal.App.2d 274, 278, 333 P.2d 64, 66 (1964).

The crucial case is Prince v. Harting, 177 Cal.App.2d 720, 2 Cal.Rptr. 545 (1960), wherein the court held that a trial court could award a money judgment concurrently while also granting a dissolution and an accounting.

There, one of the defendants had fraudulently induced the plaintiffs to enter into a partnership with him. The partnership was to have involved an operation to manufacture certain machines in conjunction with another company which later turned out to be a shell. The defendant entered into a conspiracy with his brother by which they bought equipment for the partnership at a much lower price than was represented to the plaintiffs turning around quite a profit, which they secretly kept. Although the plaintiffs' claims were in the nature of a false promise and concealment, the court in *Prince* found a fraudulent breach of fiduciary duty.

The court determined, at 730, 2 Cal. Rptr. at 545, that such a breach of obli-

gation fell under the classic definition of a tort. Stated the court, at 736 and 737, 2 Cal.Rptr. at 555:

"These cases recognize a distinction between ordinary breaches of the partnership agreement and frauds and other torts of various kinds, which are not really 'partnership' transactions. Here, one part of the relief sought was for moneys of the partnership fraudulently diverted by defendant and Wesley the [co-conspirator] from the partnership into their own pockets. Another part was for an accounting of the partnership affairs and the dissolution and winding up of the partnership. [Citation omitted.] *It was proper to combine both the causes of action in one action in equity . . . . "* [Emphasis added.]

In order to resolve the problem of adjudicating claims piecemeal to prevent partners' claims from taking priority over creditors' claims, the court in *Prince* considered the plaintiffs as liquidators of the partnership in a comparable position to that of receiver, especially since the award would be in favor of the partnership. Jolly King's alleged self-dealing, accumulation of secret profits and other conduct constituting a possible breach of fiduciary duty is certainly analogous, especially since it is claimed that the intent to defraud existed at the time of the agreement, at the very threshold of the enterprise.[4]

This Court believes that *Prince* is so decisive as to this question that in a California court plaintiffs would be allowed to make the same damage claims as under Count six and to proceed also with the dissolution and accounting. Accordingly, the Court finds subject-matter jurisdiction present. To note in passing, as in Count one, any recovery under this count belongs first to the partnership as a partnership claim.

4. Jolly King responds that it is a very lawful and legitimate business unlike the one in *Prince*, something which the plaintiffs seek to disprove, and that the misconduct in

*Prince* was of such greater magnitude (about $155,000) than that alleged in the instant case ($3 million plus).

Also, if the relief is granted, plaintiffs will be deemed to be receivers for the benefit of creditors of Jolly King joint ventures.

*Motion to dismiss for lack of pendent jurisdiction*

This claim is unrelated to the question of subject-matter jurisdiction. In order for plaintiffs to assert the state claim of breach of fiduciary duty, the facts giving rise to that claim and a federal claim must arise out of a "common nucleus of operative fact" and be such that plaintiffs "would ordinarily be expected to try them all in one judicial proceeding." United Mineworkers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Otherwise, pendent jurisdiction is lacking and the state claim must be dismissed.

Furthermore, even though this Court may have constitutional power to hear the state claim under the *Gibbs* doctrine, it may refuse to exercise that discretion. In *Gibbs* the Supreme Court broadened the discretion of a lower court to hear or refuse the pendent claims. It said that the trial court should look to considerations of judicial economy, convenience and fairness to litigants in exercising its discretion and should avoid needless decisions of state law. To be considered are the following: Do state issues substantially predominate? Is there a good possibility of jury confusion which would justify separating the state and federal claims for trial?

### I

Defendants first contend that the breach of fiduciary duty, a state claim, does not arise out of a common nucleus of operative fact with any one of the three federal claims.

Counts two and three deal with the 10b-5 claim. As previously stated, plaintiffs are relying entirely on the agreement and prior operations of other joint ventures for relief under 10b-5 and not on oral representations connect-

ed with the agreement or conduct necessarily occurring after it. They assert that the conduct which occurred *prior* to their signing the agreements and the defendants' failure to tell them about it constituted a violation of all three sections of 10b-5. The breach of fiduciary duty, however, is predicated on conduct which occurred *after* the joint venture agreements were signed. With respect to Counts two and three I do not find a common nucleus of operative fact as to Count six.

At issue in the antitrust claim in Count one are those portions of the agreement which constitute a tying arrangement. Probably essential to this claim is the allegation that the "tied" services and products were provided at a cost above fair market price or not provided at all. This directly relates to conduct occurring after the agreement was signed and the assertions that defendants made secret profits, took advantage of the joint venture generally, and as a result breached their fiduciary duty. The alleged self-dealing gives rise to the claim that the tied products were provided for in excess of market price (or not at all) and that they constituted a breach of fiduciary duty.

Accordingly, based on the foregoing, the Court finds that the claim of breach of fiduciary duty is pendent to the antitrust claim, since both appear to arise out of this common nucleus of operative fact: Jolly King's conduct after the signing of the agreement.

### II

Even though this Court has the power to hear Count six, it could refuse to exercise this discretion in view of the necessary accounting and dissolution which this Court would have to oversee. Defendants contend that the question of overseeing the dissolution will require a dissolution and accounting of more than thirty joint ventures involving over 400 investors if the class action is declared, otherwise of at least seven joint ven-

tures. They claim that the matters of accounting and dissolution are clearly collateral and better left to state court proceedings.[5] The Court is thus confronted by the following issue. Is Count six, the claim of breach of fiduciary duty together with the request for dissolution and an accounting, an issue more appropriately left to state court proceedings, either because state issues predominate or the possibility of jury confusion?

It appears to the Court that the monetary claims for relief in this case are of such magnitude and that the allegations of misconduct so numerous and complex that an accounting and dissolution would not really be that cumbersome. More importantly, the alleged breach of fiduciary duty is directly related to Count one and should probably be heard at the same time.

Accordingly, the Court chooses to exercise its discretion in favor of keeping Count six and the attendant dissolution and accounting.

DEFENDANTS' MOTION TO DISMISS AS TO EARL GAGOSIAN AND THE SUBSIDIARIES OWNED BY ROYAL INNS.

Defendants seek to have dismissed all party defendants except Jolly King Restaurants, Inc. and Royal Inns.

■■■ Defendants first contend that there can be no conspiracy between a corporate officer acting in the normal capacity of his office and the corporation. Gagosian is president and director of both Royal Inns and Jolly King Restaurants, Inc. Plaintiffs refute the rule that a corporation and its officers cannot conspire by citing Tamaron Distributing Corporation v. Weiner, 418 F.2d 137 (7th Cir. 1969), at 139:

> "The guiding principle is the requirement that there be more than one in-

dependent business entity involved in the combination or conspiracy. Thus, in *Nelson Radio,* [5th Circuit case], the court properly held that the corporation could not conspire with its managing officers and agents who maintained no business identity separate from the corporation itself. On the other hand, where there are distinct entities, the existence of an 'agency' relationship between them does not foreclose a violation of Section 1 of the [Sherman] Act."

Gagosian is not an agent but an officer of both companies. However, *Tamaron* is applicable, and thereunder Gagosian could be deemed to be an officer of a separate entity from Jolly King and therefore a party against whom plaintiffs have a claim.

Even if Gagosian could not be sued since he is an officer of Jolly King, the company and Gagosian are alleged under Count one and possibly Count six to have conspired with unnamed others who allegedly participated in a kick-back-rebate scheme.

Further, defendants contend that plaintiffs have not alleged sufficiently a conspiracy between the subsidiaries and Jolly King *or* between Gagosian and unnamed conspirators. However, defendants do not refute plaintiffs' contention that a corporation and its subsidiaries can be guilty of a conspiracy. Rather, they mistakenly rely on Rule 9(b) which deals with fraud, although the theory of conspiracy relates primarily to the antitrust claim.

In Chapman v. Rudd Paint & Varnish, 409 F.2d 635 (9th Cir. 1969), the court held that a conspiracy claim for an antitrust violation was not maintainable without factual support. However, the trial court dismissed for failure to show sufficient facts *only after* discovery had been taken and on a motion for summa-

---

5. Although the landmark case of Ellis v. Carter, *supra*, 9th Cir., involved clearly a federal (10b–5) claim, rather than both federal and state claims, it upheld the adjudica-

tion of the dissolution and accounting of a joint venture as being pendent to the main claim.

**642**

ry judgment. Plaintiffs also cite two cases, Jack Loeks Enterprises v. W. S. Butterfield Theatres, 13 F.R.D. 5, 8 (E.D.Mich., 1952), and Makan Amuse. Corp. v. Trenton-New Brunswick Th. Co., 3 F.R.D. 429, 431 (D.N.J.1944), for the proposition that facts going to conspiracy involve details of acts usually unavailable or unknown to plaintiff until after discovery.

For the foregoing reasons, the Court therefore denies defendants' motion to dismiss certain parties.

MOTION TO PERMIT DEFENDANTS
TO PROCEED UNDER 12(g).

Given the complexity of this case and the early stage at which defendants have moved for dismissal, the Court grants defendants' motion to proceed under 12(g).

It is so ordered.